LEVI W. LINDSEY, Appellee, v. WESTERN MUTUAL AID SOCIETY, Appellant.

1. **Appeal**: RECORD: STIPULATION. Where the appellant's abstract recited that it contained all of the evidence which was offered or introduced upon the trial in the court below, to which the appellee filed a denial, but afterwards a stipulation between the parties was filed to the effect that the statements of the appellant's abstract and amendments would be fully sustained by a transcript of the record if filed therein, *held*, that the objection of the appellee to the consideration of the case because it was not shown that the record contained all of the evidence should be overruled.

2. **Mutual Benefit Societies**: CERTIFICATE: CHANGE OF BENEFICIARY: CONDITIONS: WAIVER. A certificate in the defendant society issued to one W., and payable to herself, or to her legal heirs or assigns, was, at the request of W., canceled, and a new certificate issued payable to the plaintiff, as beneficiary. The latter certificate provided that it should be void if sold or assigned to anyone not a natural heir of the member named therein, or in case the beneficiary as named is not such heir. Upon discovering such provision in the second certificate, the company was notified that the plaintiff was not a natural heir of W., but only a friend. To this the company responded in a letter to W., evidently overlooking the issuance of the second certificate, that there was nothing to prevent her making L. her beneficiary, as the certificate was made payable to herself; and thereafter the defendant continued to collect assessments, and treated the certificate as valid. *Held*, that the defendant had, by its conduct, waived the provision requiring the beneficiary in the certificate to be the natural heir of the insured.

3. ——: ——: ——: ——: ——. Such waiver, nor the certificate was not invalidated by the subsequent enactment of section 7 of chapter 65 of Laws of the Twenty-First General Assembly forbidding the issuance of such certificates unless the beneficiary shall be the husband, wife, relative, legal representative, heir or legatee of the insured. Neither would such certificate be brought under the operation of said statute by reason of a forfeiture thereof for non-payment of an assessment, and the subsequent reinstatement of the member, after said act took effect.

4. ———: ———: FORFEITURE: REINSTATEMENT: FRAUD: EVIDENCE. To prove that W., the holder of said certificate, secured her reinstatement after forfeiture through misrepresentations as to her health, the defendant offered in evidence the proofs of death furnished by the plaintiff, which included the affidavit of a physician to the effect that he had not seen W. until after her death, but that he learned from others that she died of intermittent fever, that age played no important part, and that for two or three years she had suffered from severe cramp in the stomach. *Held*, that conceding the competency of the evidence, it was insufficient to establish the charge of fraud as against the representations of W. at the time of her reinstatement, and the testimony of the plaintiff, that he had seen W. at various times up to the date of her reinstatement, that she was in her usual good health, so far as he knew, and was exceptionally strong for one of her years.

5. ———: ———: PAYMENT: DECREE: SCOPE OF. Under the certificate in question the defendant agreed to pay to the plaintiff the net proceeds of one full assessment at schedule rates upon all contributing members, and received at the Des Moines office within thirty days from date of the notice thereof, to an amount not exceeding two thousand dollars. The relief asked by the plaintiff was a judgment against the defendant, specific performance of said contract and general equitable relief. *Held*, that the court properly ordered by its decree that the defendant forthwith levy an assessment upon the members liable thereto, and that it make a return of its doings by a date named, showing whether or not notice of the assessment had been given each member liable thereto, the amount paid on the assessment, with the names of the members paying, and ordering that the money realized be paid into court; but that the court improperly reserved by said decree the right to require the defendant, by supplemental decree, to collect the assessments ordered by legal proceedings from members who should fail to pay upon notice, and to make good to the plaintiff all lapses or deficiences in the assessment caused by the failure of the members to keep up their membership since the date of the decree, there being nothing in the record to show that such proceedings would be necessary.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, JR., Judge.

TUESDAY, OCTOBER 20, 1891.

UPON REHEARING.

ACTION to enforce the specific performance of a contract of life insurance. A decree was entered for the plaintiff, from which both parties appeal. The

defendant contends that the decree is erroneous in all particulars, and the plaintiff that it is erroneous in one respect hereafter mentioned.—*Modified and Affirmed.*

    *W. E. Miller* and *William Kennedy*, for appellant.

    *Hume & Dawson*, for appellee.

    GIVEN, J.—I. On the former submission, the decree of the district court was affirmed (44 N W. Rep. 685), for the reason that the record failed to show that it presented all the evidence in the case. Upon petition for rehearing, it was discovered that a stipulation in writing, signed by the attorneys for the appellee, and filed and submitted with the case, had not come to the attention of the court. This stipulation, after entitling the case, is as follows: "It is hereby agreed by appellee in above-entitled cause that the statements of appellant's abstract of record and amendments thereto would be fully sustained by a transcript of the record, if filed therein." The appellant's abstract alleges that, "it contains all of the evidence which was offered or introduced upon the trial in the court below." If this statement would be fully sustained by a transcript, then surely we have all the evidence before us. This stipulation was evidently intended as a withdrawal of the appellee's denial of the correctness of the appellant's abstract and amendment, and to obviate the necessity of filing a transcript. In the light of this stipulation, it is clear that the appellee's objections to a consideration of the case on this appeal should be overruled.

    1. APPEAL: record: stipulation.

    II. This action is upon a certificate of membership issued by the defendant to Polly Wilson, death benefits payable to Levi N. Lindsey. The defendant admits issuing the certificate, the death and proofs of death of Polly Wilson, and that the defendant refuses to pay any part of the death benefit to the plaintiff. It is provided

    2. MUTUAL benefit societies: certificate: change of beneficiary: conditions: waiver:

in the certificate that it "shall be void in case it shall be sold, bartered, transferred or assigned to any one not a natural heir of the above-named member, or in case the beneficiary as named is not such heir." The defendant alleges that the plaintiff is not and was not such heir, and that the certificate is, therefore, void. The plaintiff, in reply, admits that he is not and was not a natural heir of Polly Wilson, but alleges that the defendant waived that clause in the certificate for that it had full knowledge of the fact that the plaintiff was not such an heir when the certificate was issued, and for that the defendant assessed, collected and received assessments from Polly Wilson and from the plaintiff after full knowledge of the fact that he was not a natural heir of Polly Wilson.

It is not questioned but that, if the defendant issued this certificate, or assessed and collected assessments thereon, knowing that the plaintiff was not a natural heir of Polly Wilson, that would be a waiver of this clause of the certificate. "If the society knew of the facts constituting this certificate invalid, and continued to treat it as valid, that is a waiver." *Matt v. The Roman Catholic Mutual Protection Society*, 70 Iowa, 455. The burden is upon the plaintiff to show the knowledge alleged, and he alone testifies upon that subject, and, if his testimony may be accepted as true, it shows that the defendant did have the knowledge alleged. To determine the weight to be given to his testimony, it is necessary to note that the defendant had issued a certificate of membership to Polly Wilson, December 28, 1881, payable "to herself, or to the legal heirs or assigns of said member." That, under the date of June 4, 1883, Mrs. Wilson wrote the defendant as follows: "I desire my life insurance certificate, number 3,533, to be so changed as to read, 'Will pay to Levi N. Lindsey,' instead of 'herself,' as it now reads; and as I have trusted to others whom I have intrusted to remit

punctually the assessments and dues from time to time, I desire to know if the same has been done. I inclose the certificate for alteration, and send by registered mail, which return to me." On June 7, 1883, the certificate sued upon was issued in the place of the former certificate of December 28, 1881, naming the plaintiff as beneficiary, and containing the provision already stated.

Plaintiff testifies that he first became acquainted with Mrs. Wilson in 1877; that he was a boarder at her house, and was living there at the time the certificate was originally made to her. He says the first arrangement about a change as to a beneficiary first came up in the spring of 1883. She told him she was thinking of making him her beneficiary, and at the time she thought of doing so by will. "Some time afterwards—I think in June—she wrote a letter to the society instructing them of the fact; and some time thereafter—I cannot say how long—I asked her to show me her original certificate, or the one she had. I noticed a clause in the certificate forbidding her from transferring the certificate to one not a natural heir; so doing, the certificate would be void. Then I told her she had better advise with the society before she went further. She dictated a letter to the society to me, and I wrote the letter for her, stating that I was not a natural heir; but she had no children,—as was the case,—and she desired to make me her beneficiary, but I was no relation more than a friend." The plaintiff gives as his reason for thus writing that he had noticed in "the original certificate, or the one she had," the clause forbidding a transfer to one not a natural heir, and says that the letter dated March 7, 1884 from the defendant's secretary was in answer to the one written by him. The letter from the secretary shows that it was in reply to one dated February the twenty-eighth.

The appellant's contentions are that this evidence

as to the contents of the letter written by the plaintiff is secondary and not admissible, and that it is not entitled to credit, because the certificate which the plaintiff saw was the original certificate, that did not contain the clause as to beneficiaries found in the second certificate. The appellant was notified to produce the letter of February the twenty-eighth, and failed to do so. The secretarys letter shows a receipt of a letter of that date, and the plaintiff testified that the secretary's letter was in answer to the one written by him. One of the appellants attorney's testified that he had searched in the usual place of keeping such letters, and was unable to find the one of February the twenty-eighth. This is a sufficient showing to admit evidence of the contents of that letter. There is no doubt but that a letter was addressed to the appellant February 28, 1884, and it fairly appears that this was the letter of which the plaintiff testified. It will be noticed that the second certificate was issued June 7, 1883, in lieu of the former one, and did contain the clause in regard to beneficiaries. It is evident that it was the second certificate that suggested to the plaintiff to write what he says he did, and therefore his testimony is not open to the criticism made upon it. It is true that the secretary's letter of March the seventh is not a pointed reply to what the plaintiff says he wrote February the twenty-eighth, but the secretary's letter was manifestly written under a misapprehension of the facts. He says: "There is nothing to prevent your making L. N. Lindsey your beneficiary, as your certificate is made payable to yourself;" and yet the new certificate naming Lindsey as beneficiary had been issued June 7, 1883. It is suggested that this letter was wrongly dated; that it should have been March 7, 1883. That was before any change in the beneficiary was spoken of, and the letter itself shows that it was written in 1884 by reference to an assessment as "last year, 1883."

The reasonable conclusion from the testimony is, that, the plaintiff and Mrs. Wilson having talked about the change of beneficiary, she made the application June the fourth, and the change was made by issuing the second certificate June 7, 1883; that afterwards, upon observing the clause as to the beneficiary, the plaintiff, at the dictation of Mrs. Wilson, wrote as he states, and that the secretary, overlooking the fact that the second certificate had been issued, answered as though the first were still in force, and therefore without reference to the restricting clause contained in the second. We reach the conclusion that the plaintiff's testimony is entitled to credit, and that the defendant did have knowledge as early as March 7, 1884, that the plaintiff was not a natural heir of Polly Wilson. That the defendant continued to collect assessments, and to treat the certificate as valid after this date is fully proven. It follows, under the rule we have stated, that the defendant must be deemed to have waived the clause in the certificate forbidding the making of other than natural heirs beneficiaries.

III. Appellant cites section 7, chapter 65 of Laws of the Twenty-First General Assembly, which forbids the issuing of such certificate as the one sued upon, "unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such insured member," and contends that, in view of this statute, the defendant could not waive that clause in the certificate. The act did not take effect until April 22, 1886,—long after the certificate sued upon was issued, and after the defendant had, as it then might lawfully do, waived this part of the contract.

It is contended that Mrs. Wilson forfeited her membership by failing to pay assessments due September 27, 1886. On October 20, 1886, upon her application, she was reinstated to membership. The plaintiff contends that she had not such notice of the assess-

ments as that non-payment worked a forfeiture. We think the record shows sufficient notice, and that there was a forfeiture of the membership, and restoration upon the application of October the twentieth. The defendant contends that this forfeiture and restoration created a new contract, and that, as it was after chapter 65 took effect, the certificate was void under this statute; the beneficiary named not being husband, wife, relative, legal representative or legatee of the insured member. The reinstatement was not the making of a new contract, for no new or different terms were agreed upon. It was simply a cancellation of the forfeiture, whereby Mrs. Wilson was restored to membership under the contract already existing.. No new or different certificate was issued, but defendant continued to recognize the certificate sued upon, as the valid and existing contract with the insured.

IV. The defendant pleads as a further defense that the certificate was rendered void by a failure of Polly Wilson to pay assessments due September 27, 1886, and that upon her application for restitution to membership she made a false and fraudulent statement as to the then condition of her health, whereby her certificate was forfeited and void. To this defense the plaintiff filed no reply, but relies upon the denial provided by the statute. The burden is upon the defendant to establish this defense, and the contention is whether the representations as to health were false. October, 20, 1886, Polly Wilson addressed a statement as follows to the defendant:

*"To the Western Mutual Aid Society:*

"In consideration of your accepting and receipting to me for the amount of my arrears of dues and assessments, I hereby certify that to the best of my knowledge and belief I am now free from any and all disorders and infirmities, either hereditary or acquired, tending to impair my health and constitution or shorten my life;

*4. ——: ——: forfeiture: reinstatement: fraud: evidence.*

and I hereby agree that this certificate of health shall be made a material part of my application for reinstatement, and the truth of these statements is a condition precedent to my right to indemnity under my certificate of membership.    Dated at Okmulgee this twentieth day of October, 1886.

    "[Signed]               POLLY WILSON."

The only evidence offered by the defendant to show that these representations were false is contained in the proofs of death furnished by the plaintiff to the defendant.    Passing the question made as to the defendant's right to introduce these proofs, we first inquire as to their sufficiency.    Dr. J. C. Bland states in his affidavit that he had practiced medicine exclusively three years; was not acquainted with Mrs. Wilson; did not see her until after death; that the cause of death was "intermittent fever;" age played an important part, and for the last two or three years she suffered from severe cramp in the stomach, and that last illness commenced about May 27, 1887, and death occurred June 23, 1887.    The doctor also addressed a letter to the defendant, which he says he allows to go on trial as a part of the sworn statement.    In that he says he was sent by the plaintiff to see Mrs. Wilson, but did not arrive until after her death; "and the following is the history I obtained." In stating as to the previous condition and the cause of the death of Mrs. Wilson, Dr. Bland speaks entirely upon the statements of others.    He never saw and had no knowledge of the deceased in life, and made no examination as to the cause of death.    His statements are no doubt based entirely upon what was told to him by others.    Surely such statements are entitled to but little weight, even though admissible as evidence.    The question is whether the statements made by Mrs. Wilson, October 20, 1886, were then false; not whether she afterwards became afflicted.    It is manifest that Dr. Bland had no knowledge of her condition of health

at that time. As against this, we have the statements themselves, and the testimony of the plaintiff, who was intimately acquainted with Mrs. Wilson, and was there frequently. He testifies: "At the time of the signing of this certificate, October 20, 1886, Polly Wilson was in her usual good state of health, so far as I knew. She was a lady past sixty years at this date. She did her own housework, went over town, and I would consider her an exceptionally strong lady for one of her years. J⁻ ¹ known and seen her at various times up to that date." We think the defendant has failed to prove that the statements of Mrs. Wilson were false. It is unnecessary, therefore, that we pass upon the question of the admissibility of the proofs of death as offered by defendant. These views lead to the conclusion that plaintiff is entitled to a decree.

V. The plaintiff complains of the decree because it only provides that the defendant shall make good deficiencies in the assessments caused by the failure of members to keep up their membership since the date of the decree, and contends that it should be from the date that proofs of death were made. The defendant contends that the decree grants relief not authorized by the contract nor asked in the petition. The contract is that upon receipt of satisfactory proofs of death, the member having conformed to all the conditions of membership, the defendant "will pay to Levi N. Lindsey, as per written order filed, or to the legal heirs of said member, the net proceeds of one full assessment at schedule rates upon all contributing members, and received at the Des Moines office within thirty days from date of the notice thereof, to an amount not exceeding two thousand dollars, to be paid within ten days thereafter at the society's office in Des Moines." The relief asked is "judgment against the defendant, and decree of specific performance of the defendant's contract, and for such other relief as in equity he may be entitled to, and for

5. ——: ——: payment: decree: scope of.

costs." The prayer for specific performance is broad
enough to cover whatever relief is shown to be neces-
sary to an enforcement of the contract. The decree,
after finding for the plaintiff, orders that the defendant
forthwith levy an assessment at schedule rates upon
all persons who were members of the society upon the
twenty-third day of July, 1887; that the defendant
make return of its doings by the fifteenth day of Feb-
ruary, 1889, and a statement showing its doings,
whether or not notice of the assessment had been given
each member liable thereto, the amount paid on the
assessment, with the names of the members paying,
and that the money realized be paid into court; that
like report and payment be made every fifteen days
thereafter until the amount shall equal the sum of two
thousand dollars, with interest at six per cent. from
September 1, 1887, and the costs of the suit, less costs
of collection, or until the defendant shall report that no
further sums can be realized; and that the money paid
in be paid to the plaintiff. It is further ordered that
the cause stand continued to await the result of the
assessment. To this part of the decree there is no
objection, and it seems to us to grant all the relief
called for in the record before us.

The decree proceeds to expressly reserve to the
court the right to require the defendant, by supple-
mental decree, to collect the assessment ordered by legal
proceedings from members who shall fail to pay upon
notice; also to make good to the plaintiff all lapses,
losses or deficiencies in the assessment caused by the fail-
ure of members liable to keep up their membership since
the date of the decree, and to pay the plaintiff interest
at six per cent. from September 1, 1887. The decree
further reserves the right to act upon such further sup-
plemental applications on behalf of the plaintiff as may
be found necessary to protect and enforce the rights of
the plaintiff. We have no question as to the right of
the court to continue the case for such further proceed-

ings as might be found necessary to a full enforcement of the contract; but it was certainly unnecessary that this right should have been expressly reserved, either generally or as to the particulars named.. The decree as to legal proceedings to collect the assessment, and as to making good deficiences, is premature. There is nothing in the record to show that legal proceedings will be necessary to compel payment of the assessment, nor that any deficiency will exist. For aught that now· appears, the members liable thereto will pay upon notice, and the amount realized will be sufficient to pay the amount due under the certificate. If, by the reports of the defendant required by the decree or otherwise, it shall appear that further decrees are necessary, they may then be made, but not in anticipation of a condition of things that is neither pleaded nor proven, and that may not arise. The question of the defendant's duty to collect the assessment by legal proceedings against members failing to pay on notice, and of liability to make good deficiencies, are not now in the case. What is said in *Newman v. The Covenant Mutual Ins. Association*, 76 Iowa, 56, as to making good deficiencies, was upon a supplemental proceeding.

The decree of the district court will be modified in conformity with this . opinion, and a decree entered accordingly. MODIFIED AND AFFIRMED.