SUPREME TENT OF THE KNIGHTS OF THE MACABEES OF THE WORLD *v.* VOLKERT.

[No. 3,047.  Filed April 27, 1900.  Rehearing denied Nov. 27, 1900.]

APPEAL AND ERROR.—*Record.*—*Motion to Strike Out Parts of Pleading.*—In order to present any question for review upon appeal on the ruling of the court upon a motion to strike out a pleading or a part thereof, such pleadings or parts of pleading, the motion, and ruling thereon, must be brought into the record by a bill of exceptions.  *p. 630.*

BENEFICIAL ASSOCIATIONS.—*Forfeitures.*—*Prohibited Occupations.*—*Estoppel.*—Where the local officers of a fraternal insurance company received the dues and assessments of a member after he had engaged in the liquor traffic, with a knowledge of such fact, and the company received and retained the last payment with a knowledge thereof, and of the further fact that he died while so engaged, the company will be estopped from asserting a forfeiture of the certificate under a by-law prohibiting members from engaging in the sale of intoxicating liquors.  *pp. 631–638.*

SAME.—*Forfeitures.* — *Prohibited Occupations.*—*Estoppel.*—Where a fraternal insurance company sent blank forms for proof of death and required them to be filled out and sworn to by beneficiary, with knowledge that insured had engaged in the sale of intoxicating liquors in violation of the by-laws of such company, the company is estopped from setting up a forfeiture of the certificate on the ground that he engaged in such prohibited occupation.  *pp. 638–640.*

SAME.—*Certificate.*— *By-Laws.*—*Conflict.*—Where the certificate issued by a fraternal insurance company provides that the board of trustees may suspend members from all benefits of the order who after admission engage in occupations prohibited by the by-laws, and the by-laws provide that members who engage in such prohib-

ited occupations shall stand suspended, the court, in determining the rights of the parties, will adopt the provision that will give the greater right to the insured and his beneficiary. *pp. 640–642.*

BENEFICIAL ASSOCATIONS.—*Collection of Assessments.—Local Officers Agents of Company.*—Where payment of dues and assessments to the local officers is the only method provided by a fraternal insurance company, and it is made the duty of such officers to transmit same to the home office of the company, the local officers in the collection and transmission of dues and assessments are the agents of the company, notwithstanding a provision in the by-laws to the contrary. *pp. 643, 644.*

From the Marion Circuit Court. *Affirmed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for appellant.

*F. M. Finch, J. A. Finch* and *G. A. Deitch,* for appellee.

WILEY, C. J.—On October 24, 1893, appellee's husband made application for membership in appellant order, and was issued a certificate of membership. By the terms of this certificate, appellee was to receive a benefit of not to exceed $1,000 upon the death of her husband. The certificate, among other things, provided that the board of directors might suspend a member from all benefits "who after admission engaged in occupations prohibited by the laws of the order and the action of such board in such cases shall be final." Section 142 of the by-laws provides that "if a member engages in the sale of intoxicating drinks" he shall be suspended from the order without action on the part of the officers, "and the record keeper, when any such suspension takes place, shall not receive further assessments from such suspended member. He shall enter such suspension on his record and report the same to the supreme record keeper as he would report any other suspension, giving date and cause thereof and in case any assessment shall be received from a member who has thus engaged in a prohibited occupation after his admission, the receipt thereof shall not continue the benefit certificate of such member in force, nor shall it be a waiver of his engaging in such prohibited occupation."

Some time after appellee's husband was accepted as a member, he did engage in the saloon business and sold intoxicating drinks, and while so engaged died. The officers of the local tent knew that appellee's husband was engaged in selling intoxicating drinks, and with such knowledge continued to accept his dues and assessments. Appellant's deputy supreme commander also knew that the member was so engaged. On the day appellee's husband died, a committee from the local tent called at his home, which was connected with his saloon, to take charge of the burial. This committee, on the same day, notified the chief officers of appellant of such death and stated in the notice that he was engaged in the saloon business. At the same time, they collected from the appellee an assessment which was then due from her husband and remitted it to the head office of appellant. Upon receipt of the notice of death, the chief officers sent blanks for making proof of death and such proof was made and returned by appellee. Appellant refused to pay the amount, or any amount covered by the certificate, and the appellee brought this action to enforce payment. The complaint was in three paragraphs. Appellant answered in three paragraphs, and upon the issues being joined, there was a jury trial resulting in a verdict for appellee. Appellant's motion for a new trial was overruled and judgment rendered on the verdict.

The errors assigned are: (1) The overruling of appellant's demurrer to the first paragraph of complaint; (2) the overruling of appellant's motion to strike out parts of the third paragraph of complaint; (3) the sustaining of appellee's motion to strike from the files the second paragraph of answer, and (4) the overruling of the motion for a new trial.

The first error assigned is waived by appellant in failing to discuss it. In *Tucker* v. *Sellers,* 130 Ind. 514, the court say: "The appellant's counsel have not pointed out any objections to the complaint, but say, in general terms, that

it is not good. We must, under the long settled rules of the court, decline to search for defects in the complaint, and assume that none exist. Counsel can not, by general assertions in their briefs, secure a reversal of a judgment because of supposed defects in a pleading. Defects which are not apparent from a bare statement must be specifically pointed out by counsel, and they must support their position by argument, and, if need be, by the citation of authorities." Because counsel have not attempted to point out and argue any defects in the first paragraph of complaint, we have not thought it necessary to refer to its several averments.

The second and third specifications of the assignment of error do not present any question for decision. The rule is firmly settled that to present any question for review upon appeal on the ruling of the trial court to strike out a pleading or a part thereof, such pleading or parts of pleading, the motion and ruling thereon, must be brought into the record by a bill of exceptions. *Iddings* v. *Iddings,* 134 Ind. 322; *Dudley* v. *Pigg,* 149 Ind. 363; *Holland* v. *Holland,* 131 Ind. 196; *City of Indianapolis* v. *Consumers, etc., Co.,* 140 Ind. 246, 27 L. R. A. 514; *Smith* v. *State,* 140 Ind. 343; *Owens v. Tague,* 3 Ind. App. 245; *Huggins* v. *Hughes,* 11 Ind. App. 465; *Bennett* v. *Seibert,* 10 Ind. App. 369; *Fordice* v. *Beeman,* 10 Ind. App. 295. Appellant has failed to comply with this rule in this instance, and hence, upon the questions arising upon such rulings, there is nothing presented for decision.

This leaves but one question for consideration, viz.: The overruling of appellant's motion for a new trial. Before entering upon the discussion of this branch of the case, it may be important briefly to state the facts relied upon by appellant as set out in its first paragraph of answer, and the facts which appear from appellee's reply. The answer alleged in substance that the appellant is a mutual, fraternal, beneficial society incorporated under the laws of the

state of Michigan; that the supreme tent is the highest
authority in the association and authorized to prescribe
laws for its government. Subordinate to this are great
camps, and subordinate tents. It is further averred that
the laws of the supreme tent enter into and become a part
of the contract between the association and its beneficial
members. The answer then sets out verbatim certain pro-
visions of the laws governing the association, showing the
manner in which it is organized, its objects, etc. And
among other laws pleaded is section 142, being the one re-
ferred to in plaintiff's complaint which mentions the classes
of persons who shall not be admitted into the order. The
prohibitory clause contains the following: "And no per-
son shall be eligible for membership in the order who is
engaged either as principal, agent, or servant in the manu-
facture or sale of spirituous, malt, or vinous liquors as a
beverage, and should any beneficial member of the order
engage in any of the above named prohibited occupations
after his admission, his benefit certificate shall become null
and void from and after the date of his so engaging in such
prohibited occupation and he shall stand suspended from
all rights to participate in the benefit funds of the order,
and no action of the tent or of the supreme tent shall be a
condition precedent to such suspension. The record keeper
when any such suspension takes place shall not receive fur-
ther assessments from such suspended member. He shall
enter such suspension on his records and report the same to
the supreme record keeper as he would report any other
suspension, giving date and cause thereof, and in case any
assessment shall be received from a member who has thus
engaged in a prohibited occupation after his admission, the
receipt thereof shall not continue the benefit certificate of
such member in force, nor shall it be a waiver of his en-
gaging in such prohibited occupation."

The laws set out in this paragraph also show that a reg-
ular application must be made for membership, showing

among other things the occupation of the applicant.  The laws also provide that the subordinate tent shall be the agent of the members in making application for membership, the collection and transmission of dues and assessments, the serving of notices and the like.  The answer then proceeds to aver that the deceased, Thomas H. Powell, applied for membership on the 21st day of September, 1893, through the Indianapolis tent number thirty-five, organized as a subordinate tent in the city of Indianapolis; that said application was in writing, signed by the appellant upon a blank form furnished for the purpose, and that in reliance upon the representations made in the application the beneficial certificate was issued to the deceased.  The answer then avers that the deceased engaged in the saloon business and admits that assessments were received thereafter, but without knowledge on the part of the association that he was so engaged, and that the association had no such knowledge until after his death.  It is then averred that the association is ready and willing to return to the appellee the assessments received, and the amount thereof is brought into court for her use and benefit.  With this paragraph of answer was filed, as an exhibit, the written application of the insured for membership.  By this application, it is disclosed that the applicant's occupation was that of a bookkeeper, and in it he also states that he was never engaged in the sale or manufacture of intoxicating liquors.  The paragraph closes by averring that by reason of the facts therein stated, all rights under the beneficial certificate were forfeited by the deceased having engaged in the sale of intoxicating liquors.  A copy of the certificate issued to the deceased was also filed with the answer as an exhibit.

In the affirmative reply to the first paragraph of answer, facts are alleged whereby it is sought to show a waiver and estoppel on the part of appellant.  It is averred that ten months after the insured engaged in the saloon business, appellant, with full knowledge of the facts, continued to recog-

nize him as a member, and continued :to levy and collect assessments and dues of him up to the time of his death; that on the day of his death, an officer of appellant called at the saloon of decedent, then knowing it to be such, and collected and receipted for assessments and dues which he claimed to be then due; that all of said assessments so collected have been retained by appellant; that although appellant knew he was so engaged in the saloon business, it failed and refused to suspend him, and up to his death continued to recognize him as a member in good standing.

In the third paragraph of reply, it is averred that an officer of the subordinate tent, to which the decedent belonged, on the day he died called at his place of business and collected dues and assessments, and forthwith remitted the same to the appellant, and informed appellant that the said insured was dead, and that at the time of his death he was engaged in the saloon business; that with such knowledge, appellant accepted and retained the money paid upon such assessment, and never offered to pay or tender it back.

The fourth paragraph of reply is like the third, with the additional averment that after appellant had received notice of the death of assured, as stated in the third paragraph, it sent to appellee blank forms for proof of death, which it required her to make out and be sworn to, and which she returned when completed.

Appellant's motion for a new trial rested upon these reasons: (1, 2, 3) That the verdict is not sustained by sufficient evidence and is contrary to the law and the evidence; (4) that the amount of recovery assessed by the jury is erroneous, being too large; (5, 6) that the court erred in giving and in refusing to give certain specified instructions; (7, 8) that the court erred in admitting and in overruling appellant's motion to strike out certain evidence.

The first question discussed under this branch of the case

is instruction number three, given by the court on its own motion. In this instruction the court stated to the jury that appellant by its answer admitted that it had knowledge that the decedent was engaged in the saloon business immediately after his death, and that if the jury found that on the day of his death, appellant, by an officer of the subordinate tent, to which decedent belonged, collected money from appellee for an assessment or dues upon the certificate, or by reason of his membership in appellant order, and that said money was remitted to and received by appellant after it had knowledge that the decedent had engaged in the saloon business, and that appellant did not tender back said money before this action was commenced and still retained it until the commencement of the action, then appellant would be estopped to question the validity of the certificate on the ground that decedent had violated the laws of the order in engaging in the sale of intoxicating liquors. While worded differently the same legal proposition is stated in the fourth instruction given by the court on its own motion as that in the third, and the two may be considered together. Complaint is made of these two instructions that they make no discriminations as to the rank and authority of the officer of appellant to whom such knowledge was communicated. The instructions proceed upon the theory that the knowledge was communicated to appellant itself. As appellant is a corporation, this of course implies that the knowledge was communicated to one or more of its officers. It is urged that notice to the recorder of the subordinate tent to which the decedent belonged, or to the supreme recorder, would not be notice to appellant, as they acted merely in clerical capacities. We are not called upon to decide this question, for the instructions speak of notice and knowledge to appellant and not to any officer or officers.

In *Masonic, etc., Assn.* v. *Beck,* 72 Ind. 203, the word "void" was used in the certificate. The court held that it meant "voidable," and in deciding the case, said: "The

logical and necessary deduction from this doctrine is, that a distinct act of affirmance of the contract by the party entitled to avoid it, made with knowledge of the facts, and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture or of the right to annul the contract; and so it is held in several cases already cited.   *   *   *   There is no reason why this waiver may not occur after, as well as before, the death of the person whose life was insured."

In *Erdmann* v. *Mutual Ins. Co.,* 44 Wis. 376, the insured member was in arrears.  On the 19th of the month, he gave a friend money to pay his arrears dues.  On the following day he was killed and on the same day the friend paid the money to the local lodge, which with knowledge of the fact of such death, etc., accepted the money and transmitted it to the supreme lodge with a report of a committee that the money was paid after the death of the insured.  The supreme lodge received and retained the money until after suit was brought on the certificate.  The court said: "So it seems that the defendant, with the full knowledge of all the facts as to the time and manner of the payment of this money, accepted and retained it long after the commencement of this suit.  This certainly amounted to a waiver of the forfeiture, if one had occurred.  *Joliffe* v. *Madison Mutual Ins. Co.,* 39 Wis. 111.  For both the lodge, which was the agent of the defendant for that purpose, received and transmitted the money, and the defendant itself accepted and retained it after notice of the death of Erdmann, and with full knowledge of all the facts relating to the payment.   *   *   *   We have already said there was nothing in the charter of the defendant which rendered the doctrine of waiver inapplicable to it.  We, therefore, hold that the legal effect of accepting and retaining the money paid on behalf of Erdmann, with full knowledge of the facts, operated as a waiver of the forfeiture."

In the case of *Warnebold* v. *Grand Lodge,* 83 Iowa 23, 48

N. W. 1069, the court say: "It is claimed that, although the said Warnebold had paid all assessments for death losses up to the time of his death, yet that he had forfeited his membership in the Evening Star Lodge by failure to pay certain dues to the lodge. It is true that certain dues were past due at one time, but previous to his death these arrearages were paid to the satisfaction of the officer whose duty it was to collect dues. No action was taken by the lodge suspending Warnebold from membership because of this delinquency. So far as the records of the lodge disclosed, he was a member in good standing at the time of his death. But it is claimed that by failing to· pay his dues at the proper time, by the constitution of the order he was suspended without any action being taken. This ignores all the rules of law applying to waiver and estoppel. The doctrine that there is something so binding and sacred in a contract of insurance that waiver and estoppel can have no application to them has long since been exploded. We need not cite authority upon this point. It is too well understood to be now questioned. When the defendant and its subordinate local lodge received Warnebold's money, and adjudged that he was in good standing when he died, it is not a matter of much consequence what may be the laws or rules or regulations of the order. If any court were to hold that in any ordinary contract such acts did not constitute a waiver of all delinquencies, it would be an adjudication which would command the respect of no one, and there is no reason why a contract of insurance should be construed differently from any other contract."

The case of *Gray* v. *National, etc., Assn.,* 111 Ind. 531, is in point. There the defense rested upon a by-law forbidding the issuing of a certificate to a person under eighteen years of age. The assured was under that age, of which fact the company had knowledge. In deciding the case, the court held that a life insurance company organized under the laws of this State which issues a policy to one

under the age required by its by-laws merely, with knowledge of the insured's true age, or which after obtaining such knowledge, still retains the consideration and makes no offer to cancel the contract, is estopped to set up the matter of age as a defense to an action on the policy.

In Iowa, it was held that where a benefit society issued a certificate of membership conditioned to be void if the beneficiary was not a "natural heir" of the member, and continues to collect assessments after knowledge of the fact that the beneficiary was not a natural heir, such acts on the part of the association constitutes a waiver of such condition. *Lindsey* v. *Western Mut. Aid Soc.*, 84 Iowa 734, 50 N. W. 29.

In the case of the *Supreme Tribe of Ben Hur* v. *Hall,* 24 Ind. App. 316, it was held that an insurance society, which demands and accepts a payment of dues after the death of a member, with knowledge of such death, is estopped from denying liability on the certificate of membership. We refer to that case and the authorities there cited without further comment. In this connection, it is proper to say that appellant relies upon section 142 of its by-laws, which defines "prohibited occupations" and the consequences arising thereunder. One of these is to engage in the manufacture or sale of intoxicating liquors. It is then provided that in case any beneficial member should engage in any of such "prohibited occupations," "his benefit certificate shall become null and void from and after the date of his so engaging, * * * and he shall stand suspended from all rights to participate in the benefit funds," etc. It is further provided that "no action of the tent, or of the supreme tent shall be a condition precedent to such suspension." It is further provided that the payment of any assessment by such prohibited member and the receipt thereof, shall not continue the benefit certificate in force, nor shall it be a waiver of his engaging in such prohibited occupation. Appellant's learned counsel urge that this by-

law is self-executing, and hence the mere fact that the insured engaged in a prohibited business forfeited his right to the beneficial membership; that no action on its part was necessary to declare a forfeiture, and hence it is absolved from liability. We can not adopt this view. Insurance contracts should be construed liberally in favor of the insured, and the facts that the insured paid his dues and assessments to the local authorities after he engaged in the liquor traffic, with the knowledge of the fact that he was so engaged, and that appellant received and retained the last payment with a knowledge of the fact, and the further fact that he died when so engaged, estops it from now asserting that the beneficial certificate was forfeited. The instructions under consideration correctly stated the law.

By the ninth instruction the court told the jury that if they found that after the death of decedent, appellant obtained knowledge that he had engaged in the liquor traffic, and with such knowledge had sent duplicate blank forms for proof of death, together with blank claimants' affidavits, and required them to be filled out and sworn to by appellee, and which was done, then appellant would be estopped to claim a forfeiture of the certificate on the ground that he engaged in such prohibited occupation. Before taking up this instruction for discussion, it may not be out of place—though somewhat foreign—to say that the record shows that after appellee had complied with appellant's requirements in making proofs of death, the company was dissatisfied upon one point, viz.: That there was a discrepancy on the question of the insured's age as given by him in his application and as shown by the proofs. The proofs of death are dated August 30, 1895. On September 23rd following, appellee received a postal card from the record keeper of the local tent calling her attention to such discrepancy; that he did so upon information from the supreme tent, and asked for additional information. This was done, and about two months thereafter, appellant informed appellee it would

not pay her the claim evidenced by the certificate because her husband had engaged in the saloon business. Recurring, after this diversion, to instruction number nine, we are clearly of the opinion that, as applied to the facts, it correctly stated the law. The identical question has been decided in this State in the case of *Replogle* v. *American Ins. Co.,* 132 Ind. 360, in which the court say: "An insurance company may, unquestionably, waive the right to avoid a policy for breach of some of its conditions. Any act done after notice of the breach of conditions which recognizes the validity of the policy is a waiver of the right to avoid it for that reason. *Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410; *Cannon* v. *Home Ins. Co.,* 53 Wis. 585, 11 N. W. 11; *Gans* v. *St. Paul, etc., Ins. Co.,* 43 Wis. 108; *Schreiber* v. *German American, etc., Ins. Co.,* 43 Minn. 367, 45 N. W. 708; *Phenix Ins. Co.* v. *Lansing,* 15 Neb. 494, 20 N. W. 22; *Webster* v. *Phenix Ins. Co.,* 36 Wis. 67; *Knickerbocker Ins. Co.* v. *Norton,* 96 U. S. 234, 24 L. ed. 689; *Prentice* v. *Knickerbocker Life Ins. Co.,* 77 N. Y. 483; *Brink* v. *Hanover Ins. Co.,* 80 N. Y. 108; *Osterloh* v. *New Denmark, etc., Ins. Co.,* 60 Wis. 126, 18 N. W. 749; *Viele* v. *Germania Ins. Co.,* 26 Iowa 9. In the case of *Titus* v. *Glens Falls Ins. Co., supra,* the court said. 'When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interest, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver can not be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after

knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble · or expense, the forfeiture is as matter of law, waived, and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel.' In *Cannon ·v. Home, etc., Ins. Co., supra,* the supreme court of Wisconsin say: 'The proposition upon which counsel rely is this: that a party can not occupy inconsistent grounds or positions; that one who relies upon the forfeiture of a contract can not, at the same time, treat the contract as an existing and valid one, nor call upon the other party to the contract to do anything required by it; or, to apply the proposition to the precise facts in the case, that, as the defendant, in its correspondence with the attorneys for the plaintiff, after full knowledge of the forfeiture, saw fit to call for additional proofs of loss, recognizing by this act the continued validity of the policy, it could not, after the plaintiff had gone to the expense and trouble of furnishing these proofs, change its ground and claim that the policy was no longer in force. We think this proposition is sound in law and amply sustained by the doctrine of the adjudged cases.' To the same effect, and equally emphatic, is the case of *Gans* v. *St. Paul Fire, etc., Co., supra.* The proposition above quoted from *Titus* v. *Glens Falls Ins. Co., supra,* was approved by this court in *Phenix Ins. Co.* v. *Tomlinson,* 125 Ind. 84, 93, 9 L. R. A. 317."

There is an apparent conflict between one of the provisions of the by-laws, 142, and a provision of the certificate sued on. In the latter it is provided that "the board of trustees may suspend members from all benefits of the order, * * * * * who after admission engage in occupations prohibited by the by-laws of the order and the action of the board in such cases shall be final," while the by-laws say that the member "shall stand suspended," etc.,

if he engage in a prohibited occupation. This being the case, the court, in determining the rights of the parties, will adopt the provision that will give the greater right to the insured and his beneficiary. In the case of the *Northwestern, etc., Ins. Co.* v: *Hazelett,* 105 Ind. 212, the court say: "It thus appears that two stipulations were incorporated in the policy, covering the same subject-matter. The one providing that upon certain conditions the policy should become absolutely void; the other, that upon precisely the same conditions, the insurance company might avoid the policy and absolve itself from liability to a certain extent. Since both of these conditions can not stand together, the inquiry is, which shall prevail?  *  *  *  A forfeiture will not be enforced unless it is clearly demanded by established rules governing the construction of written agreements. When a policy of insurance contains inconsistent or contradictory provisions, it is the rule that the provision most favorable to the assured will be adopted. *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335, 4 Sup. Ct. 466, 28 L. ed. 447; *National Bank* v. *Insurance Co.,* 95 U. S. 673, 24 L. ed. 563. Again, in the same case at page 216, the court say: "Courts will construe a contract of insurance liberally, so as to give it effect rather than to make it void. Conditions which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such a construction as will nullify the policy. *Carson* v. *Jersey City Ins. Co.,* 14 Vroom, N. J. L. 300, 39 Am. R. 584; *Franklin Life Ins. Co.* v. *Wallace,* 93 Ind. 7; Bliss Life Ins., §385." See, also, *Phenix Ins. Co.* v. *Lorenz,* 7 Ind. App. 266; *Grant* v. *Lexington, etc., Ins. Co.,* 5 Ind. 23; *Kentucky, etc., Co.* v. *Jenks,* 5 Ind. 96; *Franklin, etc., Ins. Co.* v. *Wallace,* 93 Ind. 7; *Penn, etc., Ins. Co.* v. *Wiler,* 100 Ind. 92.

Niblack on Accident Insurance and Benefit Societies, (2nd ed.) p. 294, §147, says: "It is, undoubtedly, the

general rule that a member of a society may take notice of, and is bound by its articles of association and by-laws, although they are not recited or referred to in his certificate of membership. But where the terms of a by-law and the terms of a certificate, while consistent with the charter, are inconsistent with each other, it must be held that the society has waived the provisions of the by-law in favor of the assured, and wherein they are inconsistent with the provisions of the certificate, the latter will control the rights and liabilities of the parties." *Olmstead* v. *Farmers' Ins. Co.,* 50 Mich. 200, 15 N. W. 82, is in point. A by-law of the company provided the time and manner of paying assessments, and if not paid within thirty days thereafter the insurance "may be suspended or canceled by the secretary or board of directors," etc. It was held that the board not having taken any action toward the suspension of the insured or the cancelation of his policy for non-payment of assessment, he was entitled to recover for his loss.

By instruction number ten, the court told the jury that a waiver of a forfeiture may occur simply because other persons, members of the order, had engaged in like occupation with the decedent, with knowledge of appellant and decedent, and that appellant had not taken any action to suspend or expel them. We can not approve this instruction as a correct statement of the law, but under the undisputed facts in the case, we are clearly of the opinion that as appellee was entitled to recover the jury were not misled by it. In such case, an erroneous instruction will be regarded harmless. *Van Vleck* v. *Thomas,* 9 Ind. App. 83; *Chicago, etc., R. Co.* v. *Butler,* 10 Ind. App. 244.

Other instructions given by the court of its own motion are complained of by appellant, but we are unable to see anything objectionable in them and do not deem it necessary to take them up *seriatim* and discuss them. Appellant tendered a series of instructions and of these the court refused to give the first, fourth, fifth, sixth, seventh, and ninth, to

which refusal it excepted. We will notice only those specifically discussed by appellant. By the seventh instruction so requested, the court was asked to say to the jury that the subordinate or local tent in the collection and transmission of assessments and dues from its members is the agent of the members, and that such members agree by becoming members that the supreme tent shall not be liable for any negligence, etc., on the part of the local tent. This instruction was based upon a by-law of appellant embodying the substance of the instruction. It is insisted that the assured and appellee are bound by the by-law and that the local tent is the agent of the member and not of appellant. We can not adopt this view. The only mode provided for the payment of dues and assessments by members of appellant order was to pay them to the local tent or some designated officer thereof; and it is made the duty of the latter to transmit the same to the supreme tent. To this extent at least such subordinate tent or officer is the agent of the supreme tent. In the case of *Supreme Lodge, etc.,* v. *Withers,* 32 C. C. A. 182, 89 Fed. 160, it was held that the officers of a subordinate lodge were the agents of the supreme lodge for the purpose of collecting and forwarding the dues paid by members, although the by-laws of the order provided that they should be the agents of the members in such matters. In the recent case of *Supreme Tribe of Ben Hur* v. *Hall,* 24 Ind. App. 316, this court decided the same question in harmony with this rule. See, also, *Supreme Council, etc.,* v. *Boyle,* 10 Ind. App. 301; *Supreme Lodge, etc.,* v. *Kalinski,* 163 U. S. 289, 16 Sup. Ct. 1047, 41 L. ed. 163.

By analogous reasoning, it necessarily follows that the subordinate tent or officers being agents of the supreme tent in such matters, the knowledge of such agent is the knowledge of the principal, and the supreme tent is bound thereby. Appellant's counsel complain that the court, in its instructions, has more than once spoken of knowledge of certain facts on the part of appellant when the record

shows that the local tent and its officers only possessed such knowledge. The court was justified in using this language in reference to the business decedent was engaged in, the payment of dues and assessments by him or by some one for him, and knowledge of the local officers of such facts. It follows from what we have said and the authorities, that the court correctly refused to give the seventh instruction.

By the eighth instruction tendered, the court was requested to say to the jury that the by-law declaring that a member shall stand suspended for engaging in any prohibited business was self-executing, and that no action of the supreme tent was necessary to work such suspension. This instruction was correctly refused, for, as we have seen, the by-law must be construed in the light of and in connection with the certificate, which provides that in certain events a member "may be suspended," etc. The ninth instruction embraces the same principle of law and was properly refused. We have now considered all the instructions discussed by counsel.

The eighth reason for a new trial relates to the action of the court in overruling appellant's motion to strike out the testimony of John Graham. This witness was "Deputy Supreme Commander" and his duties were defined by the by-laws. It is unnecessary to set out the evidence of this witness even in the abstract. We have examined it with care and are unable to see that the evidence in any manner prejudiced the appellant, and while some parts of it may not have been legitimate and strictly within the issues, there was no reversible error in overruling the motion to strike it out.

The verdict is sustained by the evidence and is neither contrary to the law nor the evidence. A correct and just conclusion seems to have been reached upon the merits of the case, and there is no prejudicial error for which the judgment should be reversed.

Judgment affirmed.