ELIZA B. WORLEY, APPELLEE, v. SUPREME LODGE ROYAL ACHATES, APPELLANT.

FILED FEBRUARY 15, 1911. No. 16,298.

Insurance: DELINQUENT ASSESSMENTS: FORFEITURE. Where the supreme lodge of a fraternal beneficiary society in its usual course of business, and for a long period of time, acting by an agent directly employed by it for that purpose, collected delinquent assessments from its members, and without any action on the part of the members, without question and without requiring a certificate of health, continued the certificates in force, it will not be permitted to declare a forfeiture in a case where at a time when it was accustomed to receive such payments it ascertained that the assured was sick and unable to make a health certificate, and thereupon refused to receive the payment of such delinquent assessment unless such certificate was made.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. Affirmed.

A. H. Burnett, for appellant.

Weaver & Giller, contra.

LETTON, J.

This is an appeal from a judgment upon a fraternal beneficiary certificate in favor of the plaintiff who was the beneficiary named therein. The contract is admitted and forfeiture is relied upon as a defense.

Dr. H. A. Worley, the assured, was a practicing physician, resident in Omaha. He became a member of the defendant association in July, 1901. Assessments for benefits were made monthly, and during the membership of the doctor assessments 13 to 88, inclusive, became due and payable. The supreme lodge has its headquarters in Omaha; Irving G. Baright is its supreme president, and Miss E. L. Grinnell is its supreme secretary. They have occupied these positions ever since the organization of the

association.   Dr. Worley was a member of Omaha Lodge No. 1.   The evidence shows that it was customary for the secretary of this lodge to have a desk in the office of the supreme lodge, and also to be employed by the officers of the supreme lodge to procure new members and to collect delinquent assessments, being paid by the supreme lodge an additional compensation to that to which he was entitled as secretary of the local lodge.   This collector usually called at the office of Dr. Worley each month for the past due assessment.   On one occasion the doctor sent Mr. Dopson, who worked in his office, to the office of the supreme lodge with the assessment then payable.   Dopson was then told by the supreme president that he need not bring the assessments, but that a collector would be sent for them each month.   This conversation was repeated to Dr. Worley.   Assessments were payable on the first day of each month, but were not delinquent until the first of the following month.   It was the custom of Dr. Worley to pay his assessments to the collector after they became delinquent, and no questions were asked and no certificate of health was ever required by him.

The record, however, shows a certificate of health signed by the doctor and witnessed by the supreme president in 1904, at a time when he had been delinquent for two months.   How this came to be made is unexplained save by the inference that the payment being two months past due a certificate of health was required.   The evidence of the supreme secretary shows that the payment of a delinquent assessment was considered by the supreme lodge *ipso facto* as an application for reinstatement.   The supreme lodge meets once in four years, and in the interval between its meetings the affairs of the society are managed and conducted by the executive officers.   It is the duty of the supreme executive board, which consists of the supreme president, supreme vice-president, supreme past president, supreme secretary, and supreme chaplain, to pass upon applications for reinstatement.   A majority of the board constitutes a

quorum. This board seldom met, and it is shown that the supreme secretary and one other member would usually meet once a month, and without certificates of health or other data or information than the report of payment by the delinquent would reinstate all delinquent members, and that occasionally, sometimes after four or five months had elapsed, when a quorum was present, a formal entry would be made ratifying the reinstatements made by the secretary, but that when the ratification was had no health certificates or further information was before the board.

Dr. Worley contracted a cold November 13, was able to be up and attend to patients at his house for about a week, but became worse and died on December 8, 1907. Mr. Clark, who occupied a room adjoining Dr. Worley's office, testified that about the 12th or 15th of November, 1907, Mr. Hopkins, secretary of the local lodge, who was also collecting delinquent assessments, came to the office, inquired for Worley, and was told he was at home sick. Hopkins then explained that he had not called before for the reason that he had been out on his farm in the northwestern part of the state, and that he would be back. The witness told Mr. Dopson, Dr. Worley's office-man, of this conversation. On the 15th or 16th Dopson went to the office of the supreme lodge and offered to pay the October assessment which was delinquent on November 1. He testifies that the supreme secretary told him he would have to pay the November assessment also; that he telephoned to Mrs. Worley, who told him to pay them both if he had money enough; that he had a $10 bill which he gave to the collector, but that the supreme secretary then said she would not accept it unless the doctor signed a health certificate. The money was then returned to him. The fact that Dopson was at the office and offered to pay the assessment is admitted by Miss Grinnell, but she denies saying that he must pay both assessments. She also testifies that at that time she had heard that the doctor was sick, and therefore refused to receive the money without the health certificate. Mr. Hopkins, the secretary and

collector, testifies that he called for the October assessment the latter part of that month, and on its nonpayment told Dr. Worley he would have to attend to its payment himself, but the jury evidently believed Clark's testimony as to a later visit.

The defendant concedes that it has waived the necessity of payment of the assessment upon the day fixed, and that the tender by Dopson complied with one condition of reinstatement by payment of delayed dues and assessments, but contends that it has not waived the necessity of furnishing a certificate of good health such as the by-laws require, and that the failure of Worley to furnish such certificate when demanded by the supreme secretary operated as a forfeiture of all rights under the contract.

We are of opinion, under the evidence, that the supreme lodge had by a long continued course of conduct led the assured to believe that the payment of the assessments within the first month after delinquency and without a health certificate continued the contract in force. The evidence of its secretary shows that this was its manner of doing business not only with Dr. Worley, but with all members who paid their delinquent assessments within such time. We believe Dr. Worley was entitled to rely upon the usual course of business of the supreme lodge, and that the respective rights and obligations as to payment and the necessity of a health certificate were the same as if the money had been tendered before delinquency. The manner of doing business of the supreme lodge virtually extended the period within which a reinstatement could be had without a health certificate being furnished until the first day of the month succeeding that upon which the technical delinquency occurred. The reinstatements before this time were made as a matter of course. Having thus lulled its delinquent members into security by waiving the provisions providing for a forfeiture, it would be manifestly unfair and unjust, whether on the ground of estoppel or on the ground of waiver, to allow the association to insist upon a strict compliance

with its by-laws as soon as it ascertained it was impossible for the assured to do so.

The facts are so different from those of any other case which has been before this court that it is unnecessary to refer at length to former decisions. The feature which distinguishes this case from those cited by defendant is that the assured dealt directly with an employee of the supreme lodge itself, and with its officers, and not with the officer of a subordinate lodge.

The writer still adheres to the views expressed in his dissenting opinion in the case of *Modern Woodmen of America v. Pringle,* 76 Neb. 384, 388, in a case where there was no knowledge by the supreme body of the attempted waiver by the officer of the local lodge and no ratification, but in this case the supreme body itself acted and the case falls within the rule of *Modern Woodmen of America v. Lane,* 62 Neb. 89; *Supreme Tent, K. of M. W., v. Volkert,* 25 Ind. App. 627; *Erdmann v. Mutual Ins. Co.,* 44 Wis. 376; Niblack, Accident Insurance and Benefit Societies (2d ed.) sec. 300, and cases cited in those opinions.

The judgment of the district court is

AFFIRMED.

FAWCETT, J., not sitting.