MABEL M. JOHNSON, Appellee, v. FEDERAL LIFE INSURANCE COMPANY, Appellant.

No. 44058.

DECEMBER 14, 1937.

O. H. Allbee, for appellant.

Boardman & Cartwright and Harry Druker, for appellee.

MITCHELL, J.—The Federal Life Insurance Company, as its name indicates, is a life insurance corporation, having its principal place of business in Chicago. It issued a policy of insurance to Herman Gaylord Johnson on June 19, 1931, providing for a monthly premium of $1.59. He failed to pay the premium in December of 1934 and on that account his policy lapsed. On February 1, 1935, he executed an application for reinstatement and the policy was reinstated within a few days thereafter and continued in full force and effect until the date of his death, which occurred on September 5, 1935. It was stipulated that Johnson committed suicide. The insurance company refused to make payment to the beneficiary, who commenced this suit to recover. The case was tried to the court, which entered a judgment in favor of the beneficiary. The insurance company has appealed.

It is the contention of the appellant that the insured having committed suicide within two years after reinstatement of the policy it is liable only for the premiums actually paid and not for the principal amount. The facts are stipulated. The policy lapsed, due to failure to pay the premium. The insured executed an application, prepared by the company, for reinstatement, which contained this clause:

"I further agree that said policy, if reinstated, shall be deemed and held to be incontestable after it shall have been in force during my lifetime for two years from the date of such reinstatement, (except for the non-payment of any premium)."

Nowhere in the application for reinstatement of his policy of insurance, nor anywhere in the record, does there appear any agreement, express or otherwise, that the suicide clause was extended for a period of two years from February 5, 1935. The insured's death occurred more than four years after the date the policy was written and took effect. The appellant argues that because the original policy contains a section headed "Incontestability," the policy thereby defines "incontestability" as including everything found in such section. However, it is clear from a reading of said section that only the first paragraph thereof has anything to do with "incontestability" and that the rest of the section involves limitations of liability.

An "incontestability" clause is one which by its terms puts a limitation on contestability, whereas a suicide clause, be-

cause it limits liability, affords additional contestability. Thus the first takes away the company's rights and the latter adds to the company's rights. In the case at bar, therefore, the "incontestability" clause meant that the policy could not be contested after two years. The suicide clause added one ground of contest, and is therefore a contestability clause. In other words, an incontestability clause and a suicide clause are directly opposite in character; one limits defense, the other increases it. Therefore, logic compels the conclusion that the two clauses are separate, distinct and different from each other, and neither is included in the other. It should be kept in mind that in the policy the incontestability clause and the suicide clause are separate and distinct paragraphs.

In the case of Mack v. Connecticut General Life (C. C. A.), 12 F. 2d 416, at page 418, we read:

"The contract provision expressly excluding the assumption of the risk of suicide for two years is entirely distinct from the incontestable clause, is consistent with it, and the one in no way contradicts the other. There is a distinction between facts which would warrant a rescission of the contract and a risk not covered by the contract. The incontestable clause relates to the former. The suicide clause relates to the latter. Hearin v. Standard Life Insurance Co. (D. C.) 8 F. 2d 202.

"A contest made within two years is not to be confused with a defense of death by suicide committed within two years. In the incontestable clause the two-year period is a period of limitation. The contest by suit or answer must be instituted within two years from the issuance of the policy. Missouri State Life Insurance Co. v. Cranford, 161 Ark. 602, 257 S. W. 66, 31 A. L. R. 93. But in the suicide clause the two-year period is a period of exclusion of risk on account of suicide. That clause does not undertake to limit the time within which the defense of suicide may be made, nor does the statute of Illinois, above quoted, undertake to do so."

■ If incontestability includes a defense of suicide, then why state such defense at all? If the insurance company is to have a defense based on the suicide of the insured, that defense must be expressly stated and provided for if it is to exist at all. In the application for reinstatement there was a provision as to incontestability but it said nothing whatsoever concerning the

event of suicide. The reinstatement of the policy did not have the effect of creating a new contract of insurance as of the date of reinstatement.

In the case of Stephan v. Great Western Accident Ins. Co., 209 Iowa 576, at pages 578, 579, 221 N. W. 57, 58, the late Justice Morling, speaking for this court, said:

"The contract of reinstatement of the policy does not, however, of itself change or enlarge the terms and conditions of the insurance. The policy, when reinstated (unless changed by new agreement, express or implied), evidences the continued terms and conditions of the contract of insurance. The mere fact of reinstatement after forfeiture does not, of itself, work a change in the terms and conditions of the insurance as originally written. As we have said:

" 'Moreover, the reinstatement was not the making of a new contract, for no new or different terms were agreed upon. It was simply the cancellation of a forfeiture, whereupon the contract was restored and recognized as binding by the company.' Goodwin v. Provident Sav. Life Assur. Assn., 97 Iowa 226, 238, 66 N. W. 157, 160, 32 L. R. A. 473, 59 Am. St. Rep. 411.

"See, also, Lindsey v. Western Mut. Aid Soc., 84 Iowa 734, 741, 50 N. W. 29; Business Men's Assur. Co. v. Scott (C. C. A.), 17 F. 2d 4; Cason v. Mutual L. Ins. Co., 67 Colo. 199, 184 Pac. 296, 6 A. L. R. 1395; Eicks v. Fidelity & Cas. Co., 300 Mo. 279, 253 S. W. 1029; 32 Corpus Juris 1144."

We quote from the case of Business Men's Assurance Co., v. Scott (C. C. A.), 17 Fed. 2d 4, 6; Id. 275 U. S. 531, 48 S. Ct. 28, 72 L. Ed. 410, 98 A. L. R. 345, as follows:

" 'The defendant contends that the reinstatement was not a restoration of the old policy in full force and effect, but was a new contract, and that, that contract not having been in force for a full year, the insurer was not precluded from setting up the defense of suicide. We cannot agree with this contention. The payment of the premium after the due date did not create a new contract of insurance, and had the effect simply of restoring the old contract. The only condition was that the company would not be liable for any accident occurring between the due date of the premium and the time it was paid. The insurer

was in no better position to defend than it would have been had the suicide occurred prior to the failure to pay the premium and after the lapse of the first policy year.' ''

In Mutual Life Ins. Co. v. Lovejoy, 203 Ala. 452, 83 So. 591, 592, 98 A. L. R. 345, we find the court said:

'' 'The reinstatement of the policy or contract of insurance did not have the effect of creating a new contract of insurance, dating from the time of the renewal. It had the effect only of continuing in force the original contract of insurance, which would, under its terms, have terminated and become void if it had not been reinstated in the manner and within the time provided in the original contract. This right to renew, or to reinstate the original contract, after a breach of some of the conditions by the insured—that is, a failure to pay premiums at times named—was a part of the original contract, and, after it was so renewed or reinstated in accordance with the original contract of insurance, the original contract was binding and of force as to each party just as if there had never been a breach, a renewal, or reinstatement. The original policy then stood as if there had never been a failure to pay any of the premiums when due, or any cause for forfeiture of the original.' '''

And so in the case at bar the application revived the original policy, the only exception being noted that in the application the policy was contestable until two years thereafter. Not one word was said in that application about the suicide clause. The suicide clause starts running from the date of the policy, to wit: June 19, 1931. In terms as clear as it is possible to phrase the English language, the defense of suicide was limited by the insurance company to a period of two years, and more than two years having elapsed the company cannot raise that defense. It is a cardinal principle of insurance law, so often stated that citations are not necessary, that a policy of insurance is to be construed liberally in favor of the insured and strictly against the company, and that the policy will be so considered as to permit a recovery by the insured where it is fairly susceptible of such a construction.

It necessarily follows that the lower court was right, and judgment and decree is hereby, affirmed.—Affirmed.

HAMILTON, C. J., and ANDERSON; KINTZINGER, DONEGAN, RICHARDS, STIGER, and SAGER, JJ., concur.