## Illinois Life Association v. Amelia B. Wells.

1. FORFEITURES—*When an Insurance Company Will Not be Allowed to Set Up a Forfeiture in Defense.*—If the practice of an insurance company and its course of dealings with a policy holder has been such as to induce in him a belief that so much of his contract of insurance as provides for a forfeiture for the failure to pay the premium on the day it becomes due will not be insisted upon, such company will not be permitted to set up such forfeiture, as against such policy holder.

2. SAME—*Are Odious in Law.*—Forfeitures are so odious in law, that they will be enforced only where there is the clearest evidence that such was the intention of the parties.

3. APPELLATE COURT PRACTICE—*Objection that the Parties Proceeded to Trial Without Replications to Special Pleas.*—Where the parties proceeded to trial in the court below without objection and without replications to special pleas, an objection in the Appellate Court upon such ground comes too late.

Assumpsit, on a policy of life insurance. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed July 2, 1902.

THEODORE K. LONG, HARRY WHEELER STONE and JEROME PROBST, attorneys for appellant.

ALTGELD, DARROW & THOMPSON, attorneys for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is a suit by appellee to recover upon a policy of life insurance issued upon the life of her husband, Charles B. Wells. She recovered judgment upon the policy in the Superior Court which it is now sought to reverse.

The policy provides *inter alia* that " In case the insured shall fail to pay the premiums herein required, at the office of the association, or to an authorized collector in exchange for an official receipt, signed by the president or secretary, on or before the day when the same shall fall due, the insurance hereunder shall lapse, and this policy become null and void."

The premiums were, by the policy, made payable in quarterly installments of $9.76 each.    One of these installments became due July 27, 1898.    Upon that day the assured went to the office of the company, stated that he was not prepared to pay the premium and obtained an extension of thirty days, giving his note payable at the end of that time for the amount, $9.76, then due.    This note contains a provision to the effect that the policy shall " be null and void on the failure to pay this note at maturity; " and a receipt given by the company therefor contains a similar provision. The note has never been paid, nor was the subsequent quarterly premium paid, which became due October 27, 1898. The insured, who was apparently in good health up to within a few days before his death, died of appendicitis November 14, 1898.

It is conceded by appellee's attorneys that the policy lapsed, according to the terms, upon the failure of the insured to pay the premium when due, unless the company waived the forfeiture.    It is claimed that " the company, by its previous conduct, had waived the payment of the note given July 27, 1897, and the installment due October 27, 1898." It is unnecessary, therefore, to review at length the provisions of the policy relating to forfeiture in cases of failure by the insured to pay the premiums as they mature.    The material question is whether by its conduct appellant waived the forfeiture in this case.

It is urged in support of the verdict and judgment, that they are amply warranted by evidence of waiver. This consists chiefly of statements of account between the company and the insured, and receipts to the latter for premiums paid, found among the papers of the insured after his death. Appellee's attorneys insist that these papers show appellant had not been in the habit of collecting or receiving payment of premiums upon the policy in question at the times when such premiums became due; that the money was received sometimes before and sometimes after it was due by the terms of the policy, according to the standing of the accounts at the time between the company and the insured and that by this practice the deceased was justified in assuming that appellant waived and would not insist upon compliance on his part with the terms of the policy as to time of payment. It appears that the deceased had been employed in soliciting business for appellant and had turned in more or less insurance. The last credit to him on that account was dated April 30, 1898. Statements of account were rendered by appellant from time to time. The first in point of time of these documents introduced in evidence is dated February 15, 1897, and is a receipt for a premium of $9.76. The receipt does not state when that premium had or would become due. It did not fall due the date of the receipt. The policy was issued and dated January 27, 1897. The quarterly payment of premiums were due, therefore, respectively on the twenty-seventh days of April, July, October and January of each year. The receipt of February 15, 1897, does not indicate whether it was for the premium payable on the issue or delivery of the policy, or for a subsequent premium. A premium would become due April 27th following, to which it might have been intended to apply. A statement bearing date September 1, 1897, which is introduced in evidence, shows that the insured had been charged August 10th with $32.70 on policies. This charge is made up of $22.94 charged against him for a policy issued to another party, and $9.76 quarterly premium on his own policy. This premium may

Illinois Life Ass'n v. Wells.

be the one becoming due July 27, 1897, inasmuch as there is the receipt in evidence, dated October 8, 1897, which states it is given for the quarterly premium due October 27th following.    If, then, the first installment was paid when the policy was delivered, and the payment of February 15th was for the premium to become due April 27th following, the statement would appear to indicate that the next quarterly premium due July 27th may have been paid August 10th thereafter by payment of a note; and yet whether given for that or some other premium is after all conjecture.    Counsel for appellant themselves say there is no evidence for what premium this note was given, and that it is " certainly impossible for any one to say or even infer what particular premium the note was given for."    The evidence, therefore, leaves it uncertain whether or not any of these premiums were paid and received after they became due.    Appellee's attorneys insist that one note was paid at least thirteen days and probably more, after its maturity.    This likewise is mere conjecture so far as we can ascertain from the evidence.    It is stated in the briefs of appellant's counsel that books of the company produced in court and examined by counsel and witnesses showed that each and every premium and every extension note had been paid before maturity. The abstract, however, does not show the introduction of such books in evidence, and we are unable to determine what these books would have shown if properly introduced. The testimony of the auditor of the appellant tends to show that the deceased gave notes for deferred payments of premium on at least three occasions.    Those notes were all paid out of commissions as they became due the insured, but whether before or after maturity does not appear.    The same witness stated that he could not tell from the books of the company when these notes were given, nor for how long a time.    Consequently, although the dates of their payment are testified to, there is nothing to show whether such payments were made before or after the maturity of the said extension notes.    The last payment on his policy with which the deceased is credited, was charged up April

26, 1898, out of commissions due him. The evidence is clear that appellant charged up such commissions in antici- pation of premiums becoming due. Its contention is that though it accepted payment of premiums in this way before they were due, it never accepted such payments after they were due, and never therefore waived a forfeiture for non-payment of premium when due.

The insured died suddenly, soon after the premium of October 27, 1898, became due, and appellant still held his extension note for the July premium. There is evidence tending to show that appellant offered to accept payment of the note for back premium after that time. This is con- tradicted, however, by the auditor of the company, with whom the conversation referred to is said to have been had. There is testimony, however, in behalf of appellant, tending to show that the deceased was several times told his policy had lapsed, and was asked for payment of the note and to sign an application for re-instatement; and that he replied he was not then in position to pay, but would call and pay as soon as he could. The word "lapsed" was written in pencil, it is testified, on the account of the insured, with the policy in question, by one of appellant's clerks. It thus appears that the deceased was intending to pay up as soon as he was in a position to do so, and keep his policy alive, and the appellant was willing to have him thus re-instated.

The general doctrine is that " If the practice of the com- pany, and its course of dealings with the insured, and others known to the insured, has been such as to induce a belief. that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such forfeiture, as against one in whom their conduct has induced such belief." (Chicago Life Ins. Co. v. Warner, 80 Ill. 410-413.) As said in that case " the policy did not necessarily become void, if the premium was not paid when due. The company had the undoubted right to waive the forfeiture and dispense with a prompt payment of the premium at the time it was due."

As we have said, the evidence does not clearly show

whether appellant had ever accepted payment of any premiums after they became due, except that it had done so by receiving payment of notes of the insured. It is not clear, either, whether it had accepted payment of any of these notes after their maturity. It would seem that if it had not done so, it would have been easy to prove from its own books the exact facts. This has not been done so far as we are advised. The jury found that there had been a waiver. While the proof is not so clear, either way, as might be wished, yet there is evidence, not disputed, that whatever may have been the previous course of dealing with reference to acceptance of premiums after due, neither the company nor the insured regarded this policy as finally forfeited by non-payment of the premium or note when due. Each expected back premiums to be paid up and the policy to be continued in force. It is not surprising that the jury reached the conclusion they did, in view of the failure of appellant to show from its own books the exact course of business between the parties while the policy undoubtedly remained in force, and we are of opinion upon the whole record the jury were at liberty to conclude that the course of appellant had been such as reasonably to induce a belief in the insured that his policy would not be finally forfeited, but would be continued in force until by commissions to be earned or by direct payment the overdue premiums should be paid; and this even though, sitting as jurors, we might perhaps have reached a different conclusion. It is said in a quotation made in the case last above cited, " Forfeitures are so odious in law, that they will be enforced only where there is the clearest evidence that such was the intention of the parties."

It is urged that it was error to proceed to trial without replications to two special pleas. A rule to reply could have been obtained, doubtless, on application, in due time. A motion was made, after the plaintiff had rested, to direct a verdict for the defendant. The failure to file replications was set up as one cause, among others, for granting the motion, but it does not necessarily follow that the court's

attention was called to the omission. A rule on appellee to reply could have been obtained in a proper way if it had been desired. The objection made here comes too late.

Objection is made to the refusal of an instruction requested for appellant to the effect that the allegation in the declaration of a change of the company's name after the issue of the policy sued on, was material and must be proved as alleged. It is not denied that there was such proof nor is the fact of such change disputed. The refusal of the instruction was not harmful nor do we regard it as error.

Objection is made to the first instruction given at request of appellee. This instruction tells the jury, in substance, if they believe from the evidence that payment at maturity of the note taken for the premium due July 27th was waived, and that appellant kept the note with intention of collecting the same, either from commissions for services or in cash, then the company waived the time of payment both of premium and note. It does not instruct that if the company kept the note with the intention of collecting, it could not forfeit the policy, as appellant's attorneys argue. The company had the right to collect the note if they could. They made no special effort to do so apparently, beyond holding it, and waiting for the insured to pay up; but they were entitled to collect it whether the policy was kept in force or not. Schimp v. Cedar Rapids Ins. Co., 124 Ill. 354–358. The instruction is not well framed, and is perhaps somewhat ambiguous, but we do not regard it as erroneous or harmful.

Other objections are suggested, which in view of what has been said need not be considered at length. We are of opinion that the judgment must be affirmed.