*(In the Circuit Court of Cook County.)*

### Frank Bruley, et al.

### vs.

### The Royal League.

(April, 1908.)

1. MUTUAL BENEFIT SOCIETIES—THEIR CONTRACTS—DUTY OF COURTS IN REGARD THERETO. Courts should see to it that the by-laws and contracts of mutual benefit societies, where just and reasonable, are enforced.

2. INSURANCE—RECOVERY OF PREMIUMS PAID AFTER POLICY FORFEITED. Premiums paid by an insured after his policy has been forfeited, may be recovered by his legal representatives in an appropriate action.

3. MUTUAL BENEFIT SOCIETIES—AGREEMENT BY BENEFICIARY TO BE BOUND BY AFTER ENACTED BY-LAWS—EFFECT. An agreement by a member of a mutual benefit society to be bound by after enacted by-laws is binding on him unless the by-laws so enacted are unreasonable.

4. INSURANCE—FORFEITURE OF POLICY—AGREEMENT THAT OFFICERS CANNOT WAIVE. Where an insured agrees in his contract for insurance that officers and agents cannot waive a forfeiture of the policy, such an agreement is binding on him and the insurer is not estopped from insisting on a forfeiture although it is claimed that the officers or agents waived it.

5. WORDS AND PHRASES—"IMPLIED WAIVER"—"ESTOPPEL." The terms "implied waiver" and "estoppel" have been held in cases where

insurance contracts are involved to be synonymous terms, meaning the same thing.

6. ESTOPPEL—KNOWLEDGE OF FACTS. One of the essential elements of an estoppel is that the party to be estopped has knowledge of the facts.

7. NOTICE—KNOWLEDGE OF AGENT AS KNOWLEDGE OF PRINCIPAL. It is a well settled principal of law that knowledge of the agent will not be presumed to be the knowledge of the principal except where the agent is acting withn the scope of his authority.

8. ESTOPPEL—MISLEADING OTHER PARTY. An essential element in the doctrine of estoppel is that the party claiming the benefit of the estoppel must have been misled to his prejudice by the conduct of the other party.

9. ESTOPPEL—FACTS WITHIN KNOWLEDGE OF BOTH PARTIES. Where a person claiming an estoppel has equal knowledge of the facts with the person aainst whom the estoppel is sought to be enforced, he will not be heard to say that he was misled by the conduct of the other party.

10. MUTUAL BENEFIT SOCIETIES—WAIVING SUBSTANTIAL PROVISION OF POLICY—POWER OF OFFICER OF SUBORDINATE COUNCIL. The office.· of a subordinate council of a mutual benefit society cannot waive a provision which is of the substance of the insurance contract.

11. SAME—WAIVING FORFEITURE OF POLICY—RELATION BETWEEN SUPREME AND SUBORDINATE COUNCILS. The relation of a subordinate council to the supreme council is that of agency and the subordinate lodge may waive a forfeiture resulting from a violation of the by-laws of the supreme lodge.

12. SAME—BY-LAW MAKING SUBORDINATE COUNCIL AGENT OF ASSURED. The subordinate council will be regarded as the agent of the Supreme Lodge with power ordinarily to waive a forfeiture, even though the by-laws attempt to make it the agent of the assured.

13. INSURANCE—CONSTRUCTION OF CONTRACTS—AMBIGUITY. Insurance contracts should be liberally construed in favor of the insured and strictly against the insurer; and where two interpretations equally reasonable are possible that construction should be adopted which will enable the beneficiary to recover.

14. Where A became a member of a mutual benefit society and signed a contract stipulating that if he engaged in the liquor business his rights as a member would be forfeited, and he agreed to be bound by all the by-laws of the society, and thereafter the society adopted by-laws which provided that those engaged in the liquor business could not become members; that all members who did engage in that business should stand sus-

pended; that the acceptance of assessments from members so engaging should not be a waiver of the prohibition, and that a member engaging in the prohibited occupation might be re-instated if he afterward relinquished said occupation; and A thereafter engaged in the prohibted occupation, being so engaged at the time of his death and paid his dues regularly to the collector of the society with knowledge on the local officers' part that he had become so engaged; it was *held:* that the parties having expressly stipulated to a contrary effect, the acceptance of the assessments, even with the knowledge of the officers of the local lodge of A's engagement in the prohibited occupation, did not estop the society when sued upon A's policy from defending on the ground of A's occupation·as under the law applicable to the facts set forth, the essential elements of an estoppel were lacking.

Heard before Judge John Gibbons. The facts are stated in the opinion.

*J. J. Rooney,* attorney for plaintiff.

*George W. Miller,* attorney for defendant.

GIBBONS, J.:—

This is a suit brought on a benefit certificate issued by the defendant to one Frank Bruley. The special plea of defendant alleges that said member had forfeited his beneficial membership on account of engaging in a prohibited occupation known as saloon keeper in violation of the by-laws and his contract with the defendant. The replication is in the nature of a confession and avoidance, admitting the forfeiture and alleging by way of avoidance that the defendant has waived the forfeiture through the acts of its agent by thereafter accepting and retaining dues and assessments from said Bruley with knowledge of his forfeiture. To this replication the defendant demurred.

The following abstract of the pleadings will show the status of the case. The declaration of plaintiffs alleges that on February 8, 1898, at Chicago, defendant, for a valuable consideration, executed, sealed and delivered to Frank Bruley, a certificate in writing, wherein and whereby defendant, subject to laws governing Phil Sheridan Council and Widows' and Orphans' Benefit Fund, then in force or that might thereafter be enacted, promised to pay plaintiffs, children of Frank

Bruley, a sum not exceeding $4,000 upon satisfactory proof of death and surrender of certificate provided Bruley was in good standing at time of his death and that the certificate had not been surrendered and a new one issued at his request.

That thereafter Bruley was transferred by defendant from Phil Sheridan Council to McKinley Park Council; that plaintiffs are the persons named as beneficiaries in said certificate and that Bruley died May 1, 1904; that Bruley was at time of his death a member of defendant order in good standing and had in all respects complied with all conditions of said certificate and laws, rules and regulations governing said Phil Sheridan and McKinley Park councils on his part to be performed; that he paid all dues and assessments levied against him; that said certificate was not surrendered nor any other one issued; that said certificate was in full force and effect at time of death.

It is further alleged that plaintiffs have complied with all terms and conditions of said certificate; that they notified defendant of Bruley's death and surrendered certificate to defendant, and that by reason of the premises defendant became liable to plaintiffs for $4,000 and being so liable promised to pay, etc., to the damage of plaintiffs in the sum of $6,000,

A copy of the certificate is attached to the declaration. The defendant filed the general issue and also, by leave of court, filed a special plea, alleging that defendant is a fraternal insurance society transacting its business as is provided in the statutes of Illinois, and its charter and by-laws.

That before Bruley was admitted to membership and before the issuing of said benefit certificate he signed a certain contract containing the following provision: "I agree to comply with all the laws, rules and usages now in force or which may be adopted by the order." That relying on this contract defendant issued the benefit certificate containing the following: "This certificate is issued to Frank Bruley, of Phil Sheridan Council, No. 54, Royal League, located at Chicago, Illinois, upon evidence received from said council that he is a contributor to the Widows' and Orphans' Benefit Fund of this Order * * * and upon condition that said member complies in future with the laws, rules and regulations

now governing said council and fund or that may hereafter be enacted by the Supreme Council to govern said council and fund, all of which are also made a part of this contract, * * *'' which certificate was accepted by Bruley.

That thereafter Bruley surrendered this certificate and on February 8, 1898, a new one containing same provisions was issued to him.

That after Bruley was admitted to membership and prior to his death, the Supreme Council of defendant in April, 1898, enacted by-laws in part as follows:

"Sec. 2: Persons who have been rejected by any insurance company or association within two years * * * and saloon keepers and those engaged in the manufacture and sale of intoxicating liquors are not acceptable risks and cannot become members of this Order.''

"Sec, 3: All beneficial members of this Order are prohibited from engaging in or pursuing any of the occupations or employments enumerated in the preceding section of this law and any member of the Order who shall, after obtaining membership therein, become engaged in or pursue any business or employment enumerated in Section 2 of this law shall stand suspended from and forfeit all interest in the Widows' and Orphans' Benefit Fund from and after the date of his engagement in such prohibited business, and no benefit or benefits shall be paid to the beneficiary or beneficiaries of any member on account of the death of such member occurring while he is engaged in any of the said employments enumerated.''

That thereafter, in April, 1899, section 3 was amended by adding thereto the following:

"In case any assessment shall be received from a member who has thus engaged in a prohibited occupation after his admission, the receipt thereof shall not continue the benefit certificate of such member in force, nor shall it be a waiver of his engaging in such prohibited occupation.''

That said by-laws remained in force up to Bruley's death and as such were a part of his contract.

That before being admitted to membership and before de-

livery of certificate Bruley signed another contract contained in medical examiner's blank providing in part, as follows: "And I do further for said purpose represent and declare that I am not now engaged in any of the following occupations or employments, * * * saloon keeper or the manufacture or sale of intoxicating liquors. I am not addicted to the excessive use of intoxicating liquors, opium or other injurious substances, and should I become so addicted or actively engaged in any of the above enumerated occupations or employments, my so doing shall forfeit and absolutely terminate thereafter all rights, interests, payments, benefits or privileges of myself, my family, heirs, dependents or beneficiaries without proceedings for expulsion or otherwise on the part of said association," which contract was signed by Bruley.

That Bruley on July 1, 1903, became engaged as a saloon keeper and continued in such occupation until his death; that he thereby violated said by-laws of defendant notwithstanding his agreement to conform therewith, and violated the contract not to engage in said business, and by reason of the promises all rights, interests, benefits, payments and privileges of said Bruley and his beneficiaries became forfeited and defendant discharged from liability under said certificate.

Replication to first special plea filed, confessing allegations of the plea and avoiding the same by alleging that defendant through its authorized officers and agents became informed and well knew the fact that Bruley had become engaged as a saloon keeper and continued in such engagement up to time of his death, and that with such knowledge, defendant, by its authorized officers and agents, continued to treat and assess Bruley as one of its members and to receive and accept from him up to his death monthly dues and assessments required to be paid by its members and has ever since retained said dues and assessments.

Defendant filed a general demurrer to the replication to said first special plea. Thereafter before the demurrer was disposed of defendant, by leave of court, amended its first

special plea, which amended special plea contained all the allegations set up in the original first special plea and in addition thereto certain other by-laws which were in force on May 1, 1903, and continued in force until Bruley's death, as follows:

"Law 2, sec. 3, subsection 3. If such member shall permanently relinquish said occupation or employment he may be reinstated in the same manner as though suspended for non-payment of assessments."

"Law 2, sec. 4, subsection 4. The receipt and retention of dues and assessments shall not, in any case, constitute a waiver of any law or defense which might have been relied on by this Order had such payments not been received and retained."

"Law 4, sec. 3, subsection 2. All beneficiary members admitted prior to July 1, 1902, and all such members admitted on and subsequent to said date, shall pay to the collector, on or before the last day of each calendar month, the following rates of assessment," etc.

"Law 4, sec. 6, subsection 2. The Collector shall be considered to be the agent only of the member paying assessments, and any acts of omission or commission of the Collector shall not bind the Order, nor in any manner waive any part of the Constitution or laws of the Order."

The said first amended special plea of defendant further alleges that Bruley on July 1, 1903, became engaged as saloon keeper notwithstanding his agreement to the contrary; that he continued in said occupation up to his death without the knowledge of the managing officers of defendant; that he thereby violated the aforesaid by-laws of defendant notwithstanding his agreement to conform therewith, and further violated his contract not to engage in said business, and that by reason of the premises all rights, interests, benefits, payments and privileges of Bruley and his beneficiaries were forfeited and defendant discharged from all liability under such certificate.

The plaintiffs filed a replication to said amended first spec-

ial plea, confessing the allegations thereof and avoiding the same by alleging that shortly after Bruley became engaged in said occupation the officers and members of McKinley Park Council, a subordinate council of defendant, including the scribe and collector of said council, became informed and well knew that Bruley was so engaged and knew that he continued to be so engaged up to his death, and with such knowledge defendant, acting through said subordinate council, continued to treat the benefit certificate issued to Bruley in full force and effect and continued to recognize Bruley as one of its beneficial members up to the time of his death, during all of which time it demanded, accepted and retained from Bruley the combined monthly dues and assessments required to be paid by its beneficial members holding like certificates, and defendant has ever since then retained the same.

To which replication the defendant filed a general demurrer and upon the facts thus pleaded the Court must determine as a matter of law whether or not a recovery may be had on the certificate, by reason of the fact that the local council knowingly continued to receive and retain the assessments paid by Bruley after he became engaged in the prohibited business.

By its demurrer to the replication to said first amended special plea, the defendant admits, as alleged therein, that the subordinate council had full knowledge that Mr. Bruley while one of its members had engaged in the occupation of a saloon keeper and continued in that occupation up to the time of his death, in violation of the by-laws of the defendant, and his agreement to comply therewith; and with that knowledge of the subordinate council, the defendant continued to treat him as a member and to assess, receive and retain from him up to the time of his death, all monthly dues and assessments required to be paid by its members, and that it has ever since retained the same.

The plaintiffs specifically contend that the acceptance of the dues and assessments arising from the insurance policy constitute a waiver of the forfeiture by reason of the facts

alleged in their replication, and contend that there is a waiver of the forfeiture because of the conduct of the subordinate council of the defendant in continuing to treat the benefit certificate of Bruley as being in full force and effect and in recognizing Bruley as a beneficial member up to the time of his death; by accepting, collecting and retaining the monthly dues and assessments paid by him under his benefit certificate, with full knowledge on its part of the forfeiture incurred by him, and so the replication to the said amended first additional or special plea of the defendant alleges that "at or shortly after the time said Bruley became so engaged in said occupation, the officers and members of the subordinate council of the defendant, known as McKinley Park Council No. 218, Royal League, including the scribe and collector of said council, became informed and well knew of the fact that he, said Bruley, had become so engaged and well knew of the fact that he continued in said occupation up to the time of his death, and with such knowledge, the defendant, acting through said subordinate council, continued to treat the benefit certificate so issued to said Bruley as being in full force and effect and continued to recognize said Bruley as one of the beneficial members of the defendant up to the time of his death. On this state of facts it is contended that by reason of the alleged conduct on the part of the subordinate council, the defendant is estopped from now insisting upon the forfeiture incurred by reason of Mr. Bruley engaging in the prohibitive occupation. The defendant, however, contends that it is not liable on the policy because Mr. Bruley expressly agreed that his engaging in the occupation of a saloon keeper would forfeit all rights under its policy and that in case any assessment should be received from him while thus engaged, the receipt thereof would not continue the policy in force or be a waiver of his engaging in that business; and that because Mr. Bruley had incurred the forfeiture by engaging in the occupation of a saloon keeper no acts or conduct on the part of the said subordinate council inconsistent with the right of the defendant to insist upon a forfeiture can estop it from

now setting up the same as a defense to the suit on the insurance policy,

Fraternal insurance should, and doubtless would, be the popular and ideal plan of insurance if the members were true to themselves and the local councils were conducted along the lines of correct business methods. The rules and by-laws of every corporate body are designed for the common good of its members, and if in a specific case the court places its seal of approval upon the infraction or evasion of a by-law, by a subordinate council or lodge, it thereby establishes a precedent which may benefit the family interested in the specific case, which, if followed in a number of cases, will inevitably . endanger, if not destroy, the security of thousands who for years faithfully observed and complied with every obligation imposed upon them by the laws of the order.

The only safe rule for courts to pursue, in cases of this nature, is to ascertain what the charter and by-laws of the order are and rigidly enforce them. It is a matter of common knowledge that fraternal insurance companies have been greatly hampered and well nigh ruined because of the lax business methods pursued by subordinate councils, and, as a matter of self-preservation, the supreme or governing bodies have been forced to adopt stringent by-laws and to make strict contracts, such as we find in the case at bar, in the interest of the thousands of widows and orphans whose securities in societies of this nature depend entirely upon the honest administration of their fiscal and prudential affairs. Courts must see to it that their by-laws, when fair and reasonable, are upheld, and their contracts, when just and equitable, enforced. Actuated by these considerations, and influenced by a firm sense of duty, the by-law and contract involved in the present case, will be upheld and enforced by this court, unless the contention of learned counsel for plaintiff is fortified by the greater weight of authority, or appeals to me as being the more reasonable and just.

In this connection I may state that by reason of the forceful argument advanced and the great number of authorities cited by counsel for plaintiffs, I was strongly inclined to fol-

low the contention that the by-law in question is invalid, for the reason that no provision is made therein for the return of the dues and assessments paid by the insured during the period which the policy was forfeited. But the court is of opinion that this question does not necessarily arise in the present status of the case because the representatives of the deceased may, in an appropriate action, be able to recover the amounts so paid. Until an administrator of Mr. Bruley's estate is appointed, there is no person to whom the defendant could legally pay the money. *Thompson v. Travelers Ins. Co.*, 91 N. W. (N. D.) 75.

Passing to the more serious legal question involved, the case upon which the contention of learned counsel for plaintiffs is principally based is *Supreme Tent K. of M. of the World v. Volkert*, 25 Ind. App. 627, 57 N. E. 203. The decision in this case is by the appellate court, and, although a very able court, is not a court of last resort. The section of the by-law there considered provides, "If a member engages in the sale of intoxicating drinks he shall be suspended from the order without action on the part of the officers; * * * and in case any assessment shall be received from a member who has thus engaged in a prohibited occupation after his admission, the receipt thereof shall not continue the benefit certificate of such member in force, nor shall it be a waiver of his engaging in such prohibited occupation." Some time after appellee's husband was accepted as a member, he did engage in the saloon business, and sold intoxicating drinks, and while so engaged, died. The officers of the local tent knew that appellee's husband was engaged in selling intoxicating drinks, and with such knowledge, continued to accept his dues and assessments up to the time of his death. Upon the death of the member the society refused to pay the amount named in the policy on the ground that the insured had engaged in the prohibited occupation of a saloon keeper. Notwithstanding the insured had agreed that his engaging in that occupation would forfeit all rights under his policy, and that the receipt of any assessment after his so engaging in that

prohibited occupation would not continue his beneficiary certificate in force or constitute a waiver of his engaging in such occupation, the court held that the receipt of dues and assessments by the local agent of the company, with knowledge on his part that insured was so engaged in the prohibited occupation, together with certain other facts, which will be hereafter noticed, estopped it from setting up such a forfeiture of the policy.

It will thus be seen that the by-law in that case was similar to the by-law in the case at bar, but the contract was not identical with the one here sued on. The distinction arising from the dissimilarity of the contracts will be alluded to hereafter.

The Indiana court, in speaking of the answer filed by the supreme tent to the complaint in that case, said: "The answer alleged in substance, that the appellant is a mutual, fraternal, beneficial society, incorporated under the laws of the State of Michigan; that the supreme tent is the highest authority in the association, and authorized to prescribe laws for its government. Subordinate to this are great camps and subordinate tents. It is further averred that the laws of the supreme tent enter into and become a part of the contract between the association and its beneficial members. The answer then sets out *verbatim* certain provisions of the laws governing the association, showing the manner in which it is organized, its objects, etc. And among other laws pleaded is the prohibitory clause, which contains the following: 'And no person shall be eligible for membership in the order who is engaged, either as principal, agent or servant, in the manufacture or sale of spirituous, malt or vinous liquors as a beverage; and, should any beneficial member of the order engage in any of the above named prohibited occupations after his admission, his benefit certificate shall become null and void from and after the date of his so engaging in such prohibited occupation, and he shall stand suspended from all rights to participate in the benefit funds of the order, and no action of the tent or of the supreme tent shall be a condition precedent to such suspension. The record keeper, when any such

suspension takes place, shall not receive further assessments from such suspended member. He shall enter such suspension on his records, and report the same to the supreme record keeper, as he would report any other suspension, giving date and cause thereof; and, in case any assessment shall be received from a member who has thus engaged in a prohibited occupation after his admission, the receipt thereof shall not continue the benefit certificate of such member in force, nor shall it be a waiver of his engaging in such prohibited occupation.' The laws set out in this paragraph also show that a regular application must be made for membership; showing, among other things, the occupation of the applicant. The laws also provide that the subordinate tent shall be the agent of the members in making application for membership, the collection and transmission of dues and assessments, the serving of notices and the like. The answer then proceeds to aver that the deceased, Thomas H. Powell, applied for membership on the 21st day of September, 1893, through the Indianapolis Tent No. 35, organized as a subordinate tent in the city of Indianapolis; that said application was in writing, signed by the appellant, upon a blank form furnished for the purpose; and that, in reliance upon the representations made in the application, the beneficial certificate was issued to the deceased. The answer then avers that the deceased engaged in the saloon business, and admits that assessments were received thereafter, but without knowledge on the part of the association that he was so engaged, and that the association had no such knowledge until after his death.''

The court in speaking of the replication filed to said answer, said: ''In the affirmative reply to the first paragraph of answer, facts are alleged whereby it is sought to show a waiver and estoppel on the part of the appellant. It is averred that ten months after the insured engaged in the saloon business, appellant, with full knowledge of the fact, continued to recognize him as a member, and continued to levy and collect assessments and dues of him up to the time of his death; that on the day of his death an officer of appellant called at

the saloon of decedent, then knowing it to be such, and collected and receipted for assessments and dues which he claimed to be then due; that all of said assessments so collected, have been retained by appellant; that, although appellant knew he was so engaged in the saloon business, it failed and refused to suspend him, and up to his death continued to recognize him as a member in good standing. In the third paragraph of reply it is averred that an officer of the subordinate tent to which the decedent belonged, on the day he died, called at his place of business, and collected dues and assessments, and forthwith remitted the same to the appellant, and informed appellant that the said insured was dead, and that at the time of his death he was engaged in the saloon business; that, with such knowledge, appellant accepted and retained the money paid upon such assessment, and never offered to pay or tender it back.'' It was further alleged in the replication that the supreme tent after it received such notice retained the dues and assessments and sent blanks for proof of death.

The court held that under these facts the defendant was estopped to deny liability and the plaintiff's judgment for the amount of the policy was affirmed.

Another case wherein the by-law is exactly similar to the one in the above case, and which holds diametrically opposite thereto is that of *Schmidt v. Supreme Tent K. of M. of the World*, 97 Wis., 528, decided by the supreme court of Wisconsin; wherein it appears that at the time Schmidt joined the order he was a baker, but he thereafter opened a saloon in the basement of the building used by him as a bakery, and obtained a retail dealer's liquor license. He died while still engaged in the saloon business, and had paid two or three assessments after the fact of his engaging in such business was known to the officials of his subordinate tent. The supreme tent had no knowledge of the fact until after his death. The by-laws of the order provided for a forfeiture in case of any member engaging in the saloon business and further provided that: ''In case any assessment shall be received from a mem-

ber who is thus engaged in a prohibited occupation after his admission, the receipt thereof shall not continue the benefit certificate of such member in force, nor shall it be a waiver of his engaging in such prohibited occupation.'' A trial was had before the court without a jury, which resulted in a judgment for the defendant from which the plaintiff appealed, The court affirmed the judgment and in discussing the question of waiver by the acceptance of dues and assessments, said: ''It is undisputed that Schmidt engaged as principal in the business of selling liquor as a beverage in June, 1894. By this act he became suspended from the order by the terms of the by-law. There was no waiver resulting from his payment of assessments thereafter made, because the by-law in question, which has become a part of the contract, expressly provides that such payments shall not constitute a waiver.''

No case can be found which is more directly in point than the case last above quoted, and since it is an opinion of the highest court of the state of Wisconsin, it should have greater weight than the case decided by the appellate court of Indiana, unless the reasoning of the latter court is the more logical, or the conclusion reached is the more just and reasonable.

There is one fact connected with the Indiana case which would distinguish it from the Wisconsin case, and on which alone the soundness of its decision might be upheld. It is, that on the day of his death an officer of the subordinate tent called at the place of business of the deceased, collected the dues and assessments and remitted them to the suprema lodge and informed the supreme lodge that the insured was dead and that at the time of his death he was engaged in the saloon business. The supreme lodge, with this knowledge, accepted and retained the dues and assessments and sent blanks for proof of death. The fact that the supreme lodge had received dues and assessments without knowledge that the deceased was in the prohibited business, and after his death with full knowledge thereof, retained the dues and assessments received by it before his death, as well as those received thereafter, besides sending blanks for proof of death,

leaves the case widely different in its facts from the Wisconsin case and the case at bar.

It will be seen from the pleadings that Frank Bruley became engaged as a saloon-keeper and continued in such engagement up to and including the date of his death. At the time of his so entering into said employment, and continuously from that time until the date of his death, there were in force and effect certain by-laws of the defendant, one of which provided that persons engaged in the manufacture or sale of intoxicating liquors were not acceptable risks and could not become members of the order, Another by-law prohibited all beneficiary members from engaging in or pursuing the manufacture or sale of intoxicating liquors after they had obtained membership in the order and that any member who became engaged in or pursued such business ''shall stand suspended from and forfeit all interest in the widows' and orphans' benefit fund, from and after the date of his engagement in such prohibited business, and no benefit of benefits shall be paid to the beneficiary or beneficiaries of any member on account of the death of such member occuring while he is engaged in any of the said employments enumerated.''

Besides the by-laws which were binding upon Bruley, at the time he applied for admission as a member of the order he signed a certain agreement as follows: ''I agree to comply with all of the laws, rules and usages now in force, or which may be adopted by the order.'' And said benefit certificate was issued upon the express condition ''that the said member complies in future with the laws, rules and regulations now governing said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund, all of which are made a part of this contract.'' The binding force of an agreement to be bound by after-enacted by-laws has been before the courts of Illinois repeatedly, and one of the latest expressions of our supreme court is the case of *Scow v. The Royal League*, 223 Ill. 32.

Nor was the violation of the by-laws the only ground of forfeiture. In his written contract with the defendant and

known as the medical examiner's blank, said Bruley expressly agreed as follows:

"I, the undersigned, for the purpose of securing member-ship in the above named council of the Royal League * * *

"And I do further for said purpose represent and declare that I am not now engaged in any of the following occupa-tions or employments:   *   *   *   saloon-keeper or the manu-facture or sale of intoxicating liquors.

"I am not addicted to the excessive use of intoxicating liq-uors, opium or other injurious substances, and if I should be-come so addicted or actively engaged in any of the above enum-erated occupations or employments, my so doing shall forfeit and absolutely terminate thereafter all rights, interests, pay-ment, benefits or privileges of myself, my family, heirs, de-pendents or beneficiaries without proceedings for expulsion or otherwise on the part of said association. I do hereby cer-tify that I have read the foregoing and fully understand the same."

The plaintiffs do not deny that under the above express stip-ulation in his contract Bruley's entering into the saloon busi-ness forfeited all his rights and those of his beneficiaries. Neither do the plaintiffs deny in their replication that there were in full force and effect at the time said Bruley became engaged as a saloon-keeper and continuously from thence until the date of his death, the following by-laws:

"In case any assessment shall be received from a member who is thus engaged in a prohibited occupation after his ad-mission, the receipt thereof shall not continue the benefit cer-tificate of such member in force, nor shall it be a waiver of his engaging in such prohibited occupation.

"The receipt and retention of dues and assessments shall not in any case constitute a waiver of any law or defense which may have been relied on by this order, had such pay-ments not been received and retained.

"The collector shall be considered to be the agent only of the member paying assessments and any acts of omission or commission by the collector shall not bind the order or in any

manner waive any part of the constitution or laws of the order."

In the face of these by-laws, which were a part and parcel of Bruley's contract with all the other members of the society represented in their corporate capacity, by which by-laws they were all equally bound the plaintiffs by their replication, say, that because the local council of the defendant received dues and assessments from said Bruley with knowledge that he had forfeited his membership, the defendant has waived the forfeiture and is now estopped from insisting upon the same. Should the court sustain their position it would be tantamount to holding that the by-laws were a dead letter, mean nothing and were not a part of Bruley's contract with the defendant.

These by-laws by reason of the aforesaid agreement to be bound by after enacted by-laws were binding upon the member.

In *Scow v. Royal League,* 223 Ill. 32, the court says: "That a member of an association like the defendant in error, who agrees to abide by and be governed by subsequently adopted by-laws, is bound by them unless they are unreasonable is held in *Fullenwider v. Royal League,* 180 Ill. 621; *Moerschbaecher v. Royal League,* 188 *id.* 9, *Supreme Lodge Knights of Pythias v. Trebbe,* 179 *id.* 348; *Supreme Lodge Knights of Pythias v. Kutscher,* 179 *id.* 340, and *Baldwin v. Begley,* 185 *id.* 180."

It has been repeatedly held that where the insured agrees in his contract for insurance that officers and agents cannot waive a forfeiture, that such agreement is binding upon him, and that the insurer is not estopped from insisting upon a forfeiture, although it is claimed that the officers or agents waived it.

*Sprague v. Western Home Insurance Company,* 49 Mo. App. 423, was a fire insurance case. The policy provided that in case the building was left vacant the insured would forfeit the insurance. The building was vacated and the local agent of the company had notice of it and made no objection thereto. This was claimed to be a waiver, although the contract

provided that no act, declaration or agreement of the defendant's local agent would modify, strike out, waive or in any way impair the conditions of the insurance contract. In holding that the plaintiff could not insist upon a waiver, the court said (p. 427) :

"It is clear that if we are to give effect to the foregoing, if we are to enforce this contract in accordance with its plain terms, just as made and agreed to by the parties, then the plaintiff cannot maintain this action. Plaintiff agreed that no act, declaration or agreement of the defendnt's local agent could be used to modify, strike out, waive or in any way impair the conditions of the insurance contract. * * * The company has the right and power to restrict, as it may choose, the powers and duties of its agents; and, when the authority is expressly limited and restricted by the policy which the insured receives, there can be no good reason in law or equity why such limitations and restrictions shall not be considered as known by the assured and binding upon him. When the policy of insurance as in this case, contains an express limitation upon the power of the agent, such agent has no right to contract as agent of the company with the assured, so as to change the conditions of the policy, or to dispense with the performance of any essential requisite contained therein, either by parol or writing, and the holder of the policy is estopped from setting up or relying upon the powers in the agent in opposition to the limitations and restrictions in the policy," (citing cases).

"And while the courts of this state have gone far in the direction of permitting a waiver by the insurance company, by and through the acts of its officers and agents, yet this right of the company to limit by express provision in its policy the agent's authority is all the time conceded."

*Northern Assurance Company v. Grand View Building Association,* 183 U. S. 308, was also a fire insurance case and the policy contained a provision that agents had no authority to waive conditions and forfeitures. There was a forfeiture, and an agent of the company with full knowledge continued to

accept premiums from the insured. This was relied upon as a waiver, but the court held that by reason of the agreement contained in the policy in regard to the agent's authority there was no waiver. On this point the court said (p 362) :

"The plaintiff's case stands solely on the proposition that because it is alleged and the jury have found that the agent had notice or knowledge of the existence of insurance existing in another company at the time the policy in suit was executed, and accepted, and received the premium called for in the contract, thereby the insurance company is estopped from availing itself of the protection of the conditions contained in the policy. In other words, the contention is that an agent with no authority to dispense with or alter the conditions of the policy could confer such power upon himself by disregarding the limitations expressed in the contract, those limitations being according to all the authorities presumably known to the insured. * * * The plaintiff's case at its best is based on the alleged fact that the agent had been informed at the time he delivered the policy and received the premium, that there was other insurance. The only way to avoid the defense and escape from the operation of the condition is to hold that it is not competent for fire insurance companies to protect themselves by conditions of the kind contained in this policy. So to hold would as we have seen, entirely subvert well settled principles, declared in the leading English and American cases, and particularly in those of this court."

The opinion in the above case is exhaustive and contains a review of a great many authorities upon the point in issue.

In *Phoenix Insurance Co. v. Maxon*, 42 Ill. App. 164, the court said: (p. 170).

"Where a policy, already issued and delivered, contains a condition which, by the terms of the instrument, can be waived only in writing, and by a certain officer named, an attempted parol waiver by another does not bind the insurance company."

The doctrine of implied waivers has no direct bearing upon the case under consideration. This doctrine is applied to the

facts in *Bennett v. Union Central Insurance Co.*, 203 Ill. 439; *Schimp v. Cedar Rapids Ins. Co.*, 124 Ill. 354; *Chicago Life Ins. Co. v. Warner*, 80 Ill. 410; *Illinois Life Association v. Wells*, 102 Ill. App. 544; *Supreme Lodge K of P. v. Wellenvoss*, 119 Fed. 671; *Modern Woodmen of America v. Lane*, 62 Neb. 89, 86 N. W. 943; *Pelkington v. National Ins. Co.*, 55 Mo. 172; Cannon v. Home Ins. Co. of N. Y., 53 Wis. 585 11 N. W. 11; *Lutz v. Anchor Fire Ins. Co.*, 120 Ia. 136, 94 N. W. 272; *Battin v. Northwestern Mut. Life Ins Co.*, 130 Fed. 874.

The contention may be conceded that the rule of estoppel has been frequently applied to cases where the insured agreed that there could be no waiver of a forfeiture, and in cases where the waiver could only be in writing; *Metropolitan Life Ins Co. v. Sullivan*, 112 Ill App. 500; *Dwelling House Ins. Co. v. Dowdall*, 55 Ill. App. 622; *Coverdale v. Royal Arcanum*, 193 Ill. 91; *Phoenix Ins. Co. v. Grove*, 116 Ill. App. 529, affirmed, 215 Ill. 299.

In *Modern Woodman v. Coleman*, 64 Neb. 162, 89 N. W. 641, the doctrine of estoppel was applied although the insured agreed that there could be no waiver of a forfeiture, but a careful analysis of these cases will show that each one is dissimilar in some of its facts from the case at bar.

The waiver here contended for is not a formal or express waiver, but rather an implied waiver or estoppel. The terms "implied waiver" and "estoppel" have been held in cases where insurance contracts were involved to be synonymous terms meaning the same thing. *Northern Assurance Co. v. Grand View Building Association*, 183 U. S. 308.

It is therefore important to consider what the elements of an estoppel are, because if the necessary elements are not present in this case, then there can be no estoppel. One of the essential elements is that the party sought to be estopped has knowledge of the facts. *Pease v. Trench*, 98 Ill. App. 24; *Wright v. Stice*, 173 Ill. 571.

It is a well settled principle of law that the knowledge of the agent will not be presumed to be the knowledge of the principal except where the agent is acting within the scope

of his authority.  *Consolidated Coal Company v. Block & Hartman Smelting Co.*, 53 Ill. App. 565.

In the present case it does not appear that under the laws of the Royal League the officer whose duty it is to collect dues and assessments has any authority relating to the question of forfeiture on account of entering into a prohibited occupation. On the contrary, it is expressly provided that any acts of omission or commission by the collector shall not bind the order or in any manner waive any part of the constitution or laws of the order.  It is also provided that the receipt of assessments shall not be a waiver of the forfeiture.  Hence, in this case, the officer who is claimed to have knowledge of the forfeiture, did not receive the same within the scope of his authority as an agent, and therefore, his knowledge cannot be imputed to the defendant.

Another essential element in the doctrine of estoppel is that the party claiming the benefit of the estoppel must have been misled to his prejudice by the conduct of the other party. And it has been held that where the person claiming the estoppel had equal knowledge of the facts with the person against whom the estoppel is sought to be enforced, he will not be heard to say that he was misled by the conduct of the other party, and is therefore not entitled to the benefit of the estoppel.  (Authorities infra.)

Under the express provisions of the contract in this case, the officer who received the assessments from Bruley after he had gone into the saloon business had no authority to waive the forfeiture, and the contract also expressly provided that should the assessments be accepted and retained, still the forfeiture would not be waived.  No one was better apprised of these facts than was Bruley, because he was conclusively presumed to know the laws of the order which were a part of his contract, and therefore knowing, as he did, that such acceptance of dues and assessments would not waive his forfeiture, it certainly cannot be claimed that he was misled.

In *Kocher v. Supreme Council, Catholic Benevolent Legion* 65 N. J. L. 649, 52 L. R. A. 861, after the member had dis-

appeared his beneficiary continued to pay the assessments until she heard that he was dead. The supreme secretary then told her that she need not pay any further assessments until she found out whether or not he was dead, and if living, she could pay up the back assessments and restore him to good standing. The member afterwards returned, and a tender of the unpaid assessments was refused by the society, claiming that his membership was forfeited. The trial court held that the conduct of the supreme secretary was a waiver of the forfeiture. Upon appeal it was held that the secretary had no power to waive the laws of the Order, and that the forfeiture was a good defense. In its opinion, the court said: "The powers and duties of the supreme secretary as defined in the constitution and by-laws, are largely clerical, * * * but he is no where clothed with power to waive or suspend any of the provisions of the constitution and laws of the Legion. * * * It is true that the law of agency applies to officers of corporations, and that if any officer of a corporation is allowed to exercise general authority in respect to the business of the corporation or a particular branch of it * * * the corporation is bound by his acts in the same manner as if the authority was expressly granted. * * * But this immunity is extended to those only dealing in good faith with such officers, and who do not know or are not bound to know the limitations of their power by the provisions of the company's charter. * * * In the present case the plaintiff is not in the attitude of one dealing with the corporation in good faith and without notice. * * * Besides it is a general principle that persons entering mutual companies are presumed to know the terms of the charter and by-laws under which they are organized. Nor can the officers of such associations dispense with the terms and conditions of such charter and by-laws unless they are expressly authorized to do so. * * * The officers of a mutual association have no power to waive by-laws relating to the substance of the contract between an individual member and his associates in their corporate capacity."

In *Schimp v. Cedar Rapids Insurance Co.,* 124 Ill. 354, the

court said: "The waiver or estoppel relied upon, cannot prevail. It is destitute of that element which is most essential to either. It does not appear, nor is it claimed, that the assured has been mislead in any manner to her prejudice by the company accepting payment of the note."

In *Grand Lodge A. O. U. W. v. Jesse*, 50 Ill. App. 101, the laws of the order required that a health certificate be filed in case a member who was suspended more than 30 days sought reinstatement. Jesse was suspended more than 30 days and thereafter the subordinate lodge accepted the back assessments, and reinstated him without the health certificate. The Grand Lodge refused to accept the money and returned it to the subordinate lodge which in turn returned it to the member. The member died about one year after. Suit was brought on the certificate. The plaintiff claimed that the subordinate lodge was the agent of the grand lodge, and that its acts estopped the grand lodge, and that the member was misled by them. Of this point the court said (p. 108):

"If it be assumed that Douglass Lodge and its officers were agents of the grand lodge in all matters pertaining to the collection of assessments, it does not follow that they had authority to waive any of the laws of the grand lodge, which relate to the substance of a contract between an individual member and the grand lodge. * * * The constitution of the Grand Lodge provided the only method for reinstating a beneficiary certificate after it had been suspended for 30 days. The officers of the subordinate lodge could not waive these requirements. * * *

"It appears in evidence that Charles Jesse had about a year before been recorder of Douglass Lodge and knew in fact, as well as being bound to know, the rules and laws of the society.

"We see no ground for holding that the appellant is estopped from denying its liability because of the conduct of the officers of the subordinate lodge in reinstating Jesse without the certificate of good health."

*Royal Highlanders v. Scoville*, 66 Neb. 213, 92 N. W. 206, was a suit on a benefit certificate which provided for payment

on condition that the member comply with all the laws, edicts, etc. One of the laws provided that in case of suspension reinstatement might be had if the member was in good health and not engaged in any prohibited occupation. The member was suspended and subsequently took sick. A few hours before her death, the beneficiary, acting as the agent of the member, paid the arrearages, but said nothing about the condition of the member's health. The society refused to pay the claim, and when sued, set up the forfeiture to which the plaintiff replied that the acceptance of the assessments was a waiver. The court held that there was no waiver, and in its opinion said: "It is insisted, however, by the plaintiffs, that the acceptance of the assessment by Mr. Glover was a waiver of the condition of good health. We cannot agree with this contention. The members of a mutual benefit association are conclusively presumed to know its rules and regulations, and the assured therefore must have known that her good health was a condition precedent to her right to reinstatement. She was not acting, therefore, in good faith to the lodge in tendering the payment of her dues in view of the condition of her health."

In *Phoenix Insurance Company v. Maxon, supra,* it is said: "Where the assured is notified of the limitation of the authority of the agent, the former cannot rely upon the statements of the latter in excess of his authority."

*Boyce v. Royal Circle,* 99 Mo. App. 349, 73 S. W. 300, was a case of forfeiture for non-payment of dues and a waiver was claimed because the local secretary thereafter received the dues contrary to the provisions of the laws of the order. The court in its opinion said: "At the close of the defendant's evidence the court instructed the jury to return a verdict for plaintiffs for the full amount of the certificate, apparently on the assumption that the local secretary of the Cabool Circle by accepting payments of Henderson's monthly dues for May, June, July and August, waived his default, restored him to membership, and reinstated his certificate of insurance in full force and effect."

22

"That is a view of the law which we cannot accept. The, spontaneous action of local secretaries of this and kindred societies in accepting dues from suspended members contrary to the constitution or by-laws, whether the acceptance be due to ignorance or complaisance, does not, ipso facto, reinstate the insurance, and cannot have that result unless the settled rules of laws governing contractual obligations are set aside as to contracts of fraternal insurance."

The court then holds that if the supreme officers tolerated the acceptance of dues with knowledge of the facts, that there might be a waiver.

Continuing, the court said: "These contracts for fraternal insurance must be treated like other contracts. * * * Provisions for forfeitures should be strictly construed but not abrogated."

In *Supreme Lodge Knights of Pythias v. Knight*, 117 Ind. 489, it is said: "A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties and his liabilities. * * * It is not one by-law or some by-laws of which the member must take notice, for he must take notice of all which affect his rights or interests."

The next point to be considered is whether or not Bruley's course of action was affected by reason of the acceptance of these dues by the collector. This is also a necessary element in an estoppel. How can it be said that Bruley was led to believe that the order had intended to waive his forfeiture by accepting his assessments, when as far as he knew, neither the order nor its agent was aware that he had forfeited his insurance. How could he expect that they would do anything else but accept his assessments until he knew that they were aware of his forfeiture? He made no effort to apprise the officers of his forfeiture nor to inquire what the attitude of the order would be. His course of action may have been influenced by two different intentions, as contended by learned counsel for defendant.

First, it may have been his intention to conceal the fact

that he was in the saloon business from the order and to continue paying his assessments so that if he died while the order was still in ignorance as to his forfeiture, his insurance would be paid. If this was his intention, then he was attempting to perpetrate a fraud upon the order, and it will be unnecessary to cite any authorities to support the proposition that in such case, his beneficiaries would not be entitled to recover in this case.

The second intention which he may have had in paying these assessments after his breach, was that if he should thereafter relinquish the prohibited occupation in which he was then employed, he might be reinstated in accordance with Law 2, sec. 3, subsec. 3, set forth in the amended first additional plea as follows: ''If such member shall permanently relinquish said occupation or employment, he may be reinstated in the same manner as though suspended for non-payment of dues.''

In support of this point see case of *Supreme Council of Royal League v. Moerschbaecher*, 88 Ill. App. 89.

This latter case is very similar in its facts to the case at bar, except that in the case now under consideration the by-law which provides that the receipt of dues and assessments shall not amount to a waiver was not in force, and therefore the case at bar is a great deal stronger case for the defendant than was the *Moerschbaecher Case*.

Moerschbaecher was a cigar dealer when he joined the order. He afterwards engaged in the saloon business in connection with his cigar business, and remained so engaged up to the time of his death. The collector of the subordinate council continued to receive dues and assessments from him up to his death with knowledge of his being engaged in the saloon business.

Moerschbaecher joined the order one year later than Bruley did, and signed the same contract, pleaded as a part of the medical examiner's blank. The case was tried by the court without a jury, and resulted in a judgment for four thousand dollars, from which an appeal was prayed.

Law 2, sec. 3, subsec. 1, set up in the amended first additional plea was also involved in the case.

The appellate court reversed the case without remanding, holding that under sec. 3, subsec. 1, aforesaid, the entering into the saloon business absolutely terminated all rights to benefits, and aside from this, that the express stipulation in the medical examiner's blank had a like effect. And as to the question of waiver, the court said: "Nor do we regard the question of waiver as having any application."

This *Moerschbaecher Case* should control the court in the case at bar, since the same contract is involved and the facts in each case are substantially similar, except that the defendant's position is strengthened in this case by the additional provision in the contract that the receipt of dues and assessments shall not amount to a waiver, which was not in the *Moerschbaecher Case.*

See also *Northwestern Mutual Life Insurance Co. v. Ammerman,* 119 Ill. 329. The contract in this case provided that employment as trainmen, with some stated exceptions, without written consent of the company would avoid the policy. The insured became a brakeman and wrote to the agents of the company for permission to pursue that employment. They answered that such permission could not be given, but that after he ceased to be so employed, his policy would then again be in effect. He afterwards received a notice of premiums and paid them. He was killed by the cars, and upon the refusal of the company to pay the insurance, suit was brought to enforce the collection of the sum.

In its opinion, the court said (page 336): "There can be no fraud if the parties to the transaction are equally informed of all the facts, and act independently upon such knowledge equally possessed by both parties. Nor can it be said that one party has been misled or induced to do an act by the conduct or declarations of another when there has been no suggestion of falsehood or suppression of the truth by silence or otherwise, and the party acts after full knowledge, upon his own judgment or according to his own inclination. If,

as before substantially stated, the assured paid the premium under the belief, fairly influenced by the acts and declarations of the agents of the defendant company that the policy was to be in force while he continued in the prohibited occupation, the acceptance of the money by the company would estop it from insisting upon the condition of the policy as a defense. The mere act, however, of receiving or collecting the premium by the insurance company, with knowledge of an existing right of forfeiture has, so far as we know, never been held to estop the company from setting up such forfeiture if the assured had no reason fairly to conclude from the acts and declarations of the company or its agents, that the forfeiture had been or would be waived, when he made the payment of the premium, or unless the payment was made in reliance upon the validity of his policy, induced by the acts, declarations or silence of the company."

In view of the foregoing authorities it would seem reasonable that the express provisions of this contract entered into between Bruley and the defendant should be enforced.

To permit a subordinate council, by the simple act of receiving a member's assessments, to modify or set aside provisions in the contract of insurance would result in the self-destruction of the order. If such were permitted to be done, then an individual collector of a subordinate council could overrule the will of the other thousands of members of the order, and permit members of his own council to engage in any occupation whatever, however hazardous it may be, and if he had the power to do this, it would follow that he would also have the power to waive the payment of assessments.

It has frequently been held by the courts that an officer of a subordinate council cannot waive a provision which is of the substance of the insurance contract.

In *Borgraefe v. Supreme Lodge K. & L. of H.*, 22 Mo. App. 127. The defense was one of forfeiture for nonpayment of dues. The plaintiffs claimed a waiver on the ground that the lodge continued to treat the deceased as one of its members. There was a judgment for plaintiff from which defendant ap-

pealed. On the question of waiver, the Court said: "The laws and rules governing the different branches of such an order are in the nature of contracts among all the members, and considering the widespread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy, that in cases of this kind, their rules and regulations should·be substantially upheld by the judicial courts. Unless this is done, these organizations cannot be maintained. Their benevolent purposes cannot be carried out, and their benefit certificates ·cease to afford any certain indemnity to the families of their members in the case of death."

In *Ancient Order U. W. v. Jesse,* 50 Ill. App. 101, 108, it is said: "If it be assumed that Douglass Lodge and its officers were agents of the Grand Lodge in all matters pertaining to the collection ·of assessments, it does not follow that they had authority to waive any of the laws of the Grand Lodge which relate to the substance of a contract between an individual member and the Grand Lodge. * * * The constitution of the Grand Lodge provided the only method for reinstating a beneficiary certificate after it had been suspended for thirty days. The officers of the subordinate lodge could not waive these requirements."

In *Kocher v. Supreme Council Catholic Benevolent Legion, supra,* the court say: "Besides it is a general principle that persons entering mutual companies are presumed to know the terms of the charter and by-laws under which they are organized. Nor can the officers of such associations dispense with the terms and conditions of such charter and by-laws unless they are expressly authorized to do so. * * * The officers of a mutual association have no power to waive by-laws relating to the substance of the contract between an individual member and his associates in their corporate capacity."

In Niblack on Benefit Societies, page 568, in discussing the question of waiver by acceptance of assessments by an officer where the contract was forfeited from the beginning, on account of the member giving a false age, it was said: "But

assuming that the treasurer acquired notice of the fact when he received the assessments, he had no power to ratify the invalid contract. He could not admit a member and thereby make a contract of insurance, and if he had no power to make such a contract for the corporation, he had no power to validate a void contract by any ratification.''

The receipt of dues in the case at bar would have the same effect as the one assumed by Niblack. Bruley's contract was forfeited upon his engaging in the prohibited occupation without any action on the part of the order, and this is not seriously controverted by the plaintiffs. His contract with the defendant then came to an end, and if the receipt of assessments by the collector was a waiver, then the collector had the power to validate a contract, which had become void by reason of its own terms. If such be the law, it is useless for fraternal societies to make by-laws or contracts seeking to restrain or limit the authority of subordinate councils.

The learned counsel contend that *Coverdale v. Royal Arcanum*, 193 Ill. 91, is decisive of the case at bar, but as I view the case, it simply holds that a subordinate council of a benefit society is the agent of the supreme lodge or council, and that if with full knowledge of the falsity of the member's statement in his application, that he was never engaged in the business of selling intoxicating liquors, continues to receive his dues and assessments from him and treats the certificate in full force up to the time of his death, the right to forfeit the certificate by reason of the falsity of the statement is thereby waived; this is simply applying the familiar rule of estoppel to the facts as found by the jury in that case. This does not mean that the local council can abrogate a provision of the contract or nullify a by-law, binding upon the assured and the order of which he is a member and this is really the only point at issue in the present case.

Under this state of facts the supreme court held that the society was estopped to set up the forfeiture. The court said: ''Under the facts as already stated, the subordinate lodge, or its officers and members, had full knowledge of the fact that Wasserman was engaged, at least a part of the time, in selling

liquor over the counter. With that knowledge the subordinate lodge continued to receive dues and assessments from him to the amount of $575.00, from June 4, 1894, to the date of his death, on February 13th, 1896, a period of one year and a little more than eight months. During all this time the insurance certificate was treated as being in full force, and Wasserman was received and treated as a member, notwithstanding the knowledge on the part of the officers and members of the subordinate lodge of the falsity of the statement contained in his application. Certainly under the doctrine of *Order of Foresters v. Schweitzer, supra,* there was a waiver of the forfeiture of the certificate of insurance.'' See also, *Wood v. Mystic Circle,* 212 Ill. 532; *Orient Insurance Co. v. McKnight,* 197 Ill. 190, and cases there cited.

There was no provision in the by-laws nor in the contract in any of these cases, which would render the rule of estoppel anomolous and therefore the cases are not similar to the one now under consideration.

In *Moerschbaecher v. Royal League,* 88 Ill. App. 89, the member engaged in the occupation of a saloon keeper in violation of his agreement not to do so. In the replication filed by the plaintiff to the plea of the defendant setting up such agreement, it was averred that the defendant accepted from the member the quarterly dues and assessments of said member well knowing that he had become so engaged in the occupation of a saloon keeper. In that case a demurrer to said replication was overruled by the court and the replication was held to be good.

In *Germania Life Insurance Company v. Koehler,* 168 Ill. 293, the insured expressly consented that there could be no waiver of a forfeiture except by an express agreement of the company endorsed on the policy, the company was held estopped to insist upon a forfeiture after loss where the company, with knowledge of the forfeiture, continued to thereafter treat the policy as in full force by accepting and receiving premiums from the insured.

In *Fenix Insurance Co. v. Hart,* 149 Ill. 513, in speaking

of this question the court said: "The stipulation in the pol-
icy that the waiver could be made only by endorsement upon
the policy by the general agent at Chicago, was inserted for
the benefit of the insurer, and, like any other clause or condi-
tion of the policy, might be waived by the conpany."

To the same effect is *John Hancock Mutual Life Insurance
Co. v. Schlink*, 175 Ill. 284.

In *Phoenix Insurance Co. v. Raddin*, 120 U. S. 183, the
court, in speaking of this question said: "It follows that the
only question upon the instructions of the court to the jury,
which is open to the defendant on this bill of exceptions, is
whether, if insurers accept payment of a premium after they
know that there has been a breach of a condition of the policy,
their acceptance of the premium is a waiver of the right to
avoid the policy for that breach. Upon principle and author-
ity, there can be no doubt that it is. To hold otherwise would
be to maintain that the contract of insurance requires good
faith of the assured only, and not of the insurers, and to per-
mit insurers, knowing all the facts, to continue to receive new
benefits from the contract while they decline to bear its bur-
dens."

In *Hennessy v. Met. Life Ins. Co.*, 74 Conn. 699, 52 Atl.
490, the insured expressly agreed that there could be no waiv-
er of any of the conditions or stipulations of the policy ex-
cept by an agreement in writing signed by the president, vice
president or secretary of the company. The court held that
notwithstanding this agreement on the part of the insured,
the company would be estopped from insisting on a forfeiture
if it thereafter, with full knowledge, treated the policy as in
full force without such waiver in writing. See also *Grand
Lodge Ancient Order United Workmen v. Brand*, 29 Neb. 644,
46 N. W. 95.

It may be further conceded that many authorities are to
the effect that the relation of a subordinate council of a bene-
fit society to the supreme council is that of agency and that
the subordinate council may waive a forfeiture resulting from
the violation of the by-laws of the supreme lodge. This doc-

trine is supported in *High Court Ind. Order Foresters v. Schweitzer*, 171 Ill. 359; *Coverdale v. Royal Arcanum*, 193 Ill. 91; *Grand Lodge A. O. U. W. v. Lachman*, 199 Ill. 140; *Supreme Lodge Order of Mut. Protection v. Meister*, 105 Ill. App. 477; *Court of Honor v. Dinger*, 221 Ill. 176; *National Council, etc., v. Burch.* 126 Ill. App. 15; *Supreme Tent, etc., v. Volkert, supra; Modern Woodmen of America v. Coleman, supra; Ancient Order Pyramids v. Drake*, 66 Kan. 538, 72 Pac. 239; *Trotter v. Grand Lodge, etc.*, 109 N. W. (Iowa) 1099; *Brown v. Supreme Court, etc.*, 68 N. E. (N. Y.) 145; *Schlosser v. Grand Lodge*, 94 Md. 368; *Audre v. Modern Woodmen*, 102 Mo. App. 377; *Supreme Lodge, etc., v. Davis*, 58 Pac. (Colo.) 595; *McMahon v. Maccabees*, 161 Mo. 543; *Knights of Pythias v. Withers*, 177 U. S. 261; *Supreme Lodge v. Davis*, 58 Pac. (Colo.) 595.

In *Order of Foresters v. Schweitzer*, 171 Ill. 325, it is simply held that in associations of this character, the relation of the members to the order is necessarily through the subordinate lodges, and when a forfeiture of the certificate of insurance is insisted upon, it is proper to show that the subordinate lodge, with full knowledge of the alleged cause of forfeiture, continued to treat the insurance as in full force, receiving the member's dues and paying the money over to the supreme lodge, so as to show a waiver of the forfeiture.

In neither of the cases above cited was there a by-law or contract to the effect that the receipt of dues should not constitute a waiver of the forfeiture. While in the case of *National Council, etc., v. Burch*, 126 Ill. App. 15, it is expressly held that a suspension for non-payment of dues cannot be waived by an agent of a fraternal society by the acceptance of dues after the death of the member.

A similar rule was adopted in the following cases, notwithstanding the by-laws of the supreme council, attempted to make the subordinate council and its officers the agents of the members and not the agents of the supreme council: *Supreme Lodge, etc., v. Meister*, 105 Ill. App. 471; *Cline v. Woodmen*, 111 Mo. App. 606; *McMahon v. Maccabees*, 151 Mo. 543; *Bonard v. Banking, etc.*, 94 Mo. App. 450; *Modern Woodmen*

*v. Coleman,* 94 N. W. (Neb.) 814; *Schunck v. Fond,* 44 Wis. 374; *Ancient Order of Pyramids v. Drake,* 66 Kan. *supra; Knights of Pythias v. Withers,* 177 U. S. *supra; Brown v. Supreme Court,* 68 N. E. *supra; Murphy v. Ind. Order,* 77 Miss. 842; *Supreme Tent v. David,* 58 Pac. 597; *Audre v. Modern Woodmen,* 102 Mo. App. *supra; Brayman v. Grand Lodge,* 122 Mo. App. 354.

It may also be conceded that insurance contracts should be liberally construed in favor of the insured, and strictly against the insurer; and where two interpretations, equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover. *Grand Lodge Select Knights v. Beaty,* 224 Ill. 350.

To the same effect is *Terwilliger v. Masonic Acc. Asso.,* 197 Ill. 9; *Supreme Lodge, etc., v. Meister,* 105 Ill. App. 474; *Bennett v. Insurance Co.,* 203 Ill. 439; *Schimp v. Cedar Rapids Ins. Co.,* 124 Ill. 354; *High Court Order of Foresters v. Schweitzer,* 171 Ill. 325.

As the learned counsel relies so confidently upon the case of *Supreme Tent K. of M. of the World v. Volkert, supra,* it is proper to state that, in the affirmative reply to the first paragraph of the answer, "facts are alleged whereby it is sought to show a waiver and estoppel on the part of appellant. It is averred that ten months after the insured engaged in the saloon business, appellant, with full knowledge of the fact, continued to recognize him as a member, and continued to levy and collect assessments and dues of him up to the time of his death; that on the day of his death an officer of appellant called at the saloon of decedent, then knowing it to be such, and collected and receipted for assessments and dues which he claimed to be then due; that all of said assessments so collected have been retained by appellant; that although appellant knew he was so engaged in the saloon business, it failed and refused to suspend him, and up to his death continued to recognize him as a member in good standing. In the third paragraph of reply it is averred that an officer of the subordinate tent to which the decedent belonged, on the day he died, called at his place of business, and collected dues

and assessments, and forthwith remitted the same to the appellant, and informed appellant that the said insured was dead, and that at the time of his death he was engaged in the saloon business; that, with such knowledge, appellant accepted and retained the money paid upon such assessment, and never offered to pay or tender it back.'' It further affirmatively appeared that the supreme tent with full knowledge of the facts not only retained the assessment and dues, but sent blanks for proof of death.

There was still another distinguishing feature in this *Volkert Case* which should be pointed out, and that is, that there was a conflict between different provisions in the insurance contract relating to forfeiture in case of engaging in prohibited occupations, which may be seen by reference to the opinion.

It is quite evident that this *Volkert Case* was decided upon facts different from the facts in the case at bar, and since it further appears that the case was decided without having urged upon the court's attention the particular portion of the by-laws, relating to the waiver of forfeitures by the acceptance of dues and assessments, which is one of the main features of the case at bar, it cannot therefore be considered as directly analagous to the case at bar.

From a careful analysis of the authorities it will be noted that in a great many of the cases cited by counsel for plaintiffs there was no provision in the contracts or by-laws prohibiting officers and agents from waiving forfeitures. These cases were decided therefore on the broad ground that forfeitures being abhorrent to the law, may be waived by the party in whose favor they would result when all the elements of an estoppel are present. Such cases simply announce a correct and familiar principle of law, but are not controlling here because they have no direct bearing upon the question involved in the present case. In many, if not all the cases cited by plaintiffs, except the case of *Supreme Tent v. Volkert,* 57 N. E. 203, the provisions in the contracts and by-laws, relating to the powers of agents and officers to waive forfeitures were in general terms, such as ''No agent or repre-

sentative of the company shall have power to waive any provisions or conditions of the policy,'' etc., as appears in the case of *Dwelling House Ins. Co. v. Dowdall*, 55 Ill. App. 622. In this latter case it appears that all the facts were fully and truthfully stated to the agent of the company, and from them he drew his own conclusions and it was held that the company was estopped by the acts and conduct of its agent. The powers of an agent are *prima facie*, co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.

To obviate the rule that written contracts cannot be altered or contradicted by parole courts have introduced the doctrine of equitable estoppels, or, it is sometimes called, estoppels *in pais*. The principle is that where one party had by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. This is what is meant by the doctrine of estoppel, as announced by the cases cited. But as Mr. Bruley must be held to have the same knowledge of all the conditions and limitations contained in the contract and by-laws which the agent possessed, the case at bar is unlike any of those cases in this respect. It is also unlike them, and the dissimilarity becomes the more apparent, from the fact that the contract and by-laws in question are not general in their terms, and at least one of the by-laws could not be couched in language more specific to make it apply directly to the facts in this case. Mr. Bruley agreed, in so many words, that if his certificate should become forfeited by reason of his engaging in the business of a saloon keeper, the receipt and retention of assessments would not continue his certificate in force, nor be a waiver of its forfeiture. This by-law by its terms makes express reference to a certain specific act of the subordinate officer to whom dues and assessments were paid, which is the very act claimed by the plaintiffs in this case to constitute an estoppel by operation of law.

The plaintiff's contention, therefore, finds no foundation

upon the cases where the stipulations against the power of agents to waive forfeitures were made in general terms. Besides, it will be found that in many of the cases cited the doctrine announced was that which had been applied to the construction of policies issued by what is known as the old line insurance companies. It will also be found that those of them in which fraternal insurance certificates are involved the distinction is not recognized because in each of such cases there were certain facts which brought them within the principles recognized by the courts in the older cases; but the rule announced in those cases is not the established rule relative to fraternal insurance cases.

As I view the authorities it appears to me that the trend of decisions in the more recent cases, both state and federal, is in favor of upholding and enforcing by-laws and contracts similar to those here considered and as the contract has already been approved by our appellate court in *Royal League v. Moerschbaecher,* 88 Ill. App. 89, it is my duty to follow the law as there announced, supported as it is by what I consider the better reason, as well as the greater weight of modern authority.

From my construction of the law, as applied to the facts pleaded, it necessarily follows that the demurrer to the replication of plaintiffs, to the first amended special plea of defendant, must be sustained: And it is so ordered.